## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Nancy E. Lewen, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 1:17 CV 00148 |
| | ) | |
| | ) | Magistrate Judge Susan Paradise Baxter |
| Pennsylvania Soldiers and Sailors Home, *et al.* | ) | |
| | ) | **MOTION FOR PARTIAL** |
| Defendants, | ) | **SUMMARY JUDGEMENT** |

**Summary Judgment Standards**

Rule 56(a) expressly provides: "A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Summary judgment only should be granted when a reasonable jury could not find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In deciding the motion, the court must view all relevant facts in a light most favorable to the non-moving party. *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). The moving party is faced with the burden of proving that there is an absence of material facts to prove the non-moving party's case. *Celotex Corp.v. Catrett,* 477 U.S. 317, 323 (1986).

2

## I.    MEMORANDUM IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGEMENT

**Legal Arguments in Support of Claims**

**A.    CLAIM ONE- FIRST AMENDMENT**

Even assuming that the stated reasons for the termination were factually accurate and were not "pretextual," or "retaliatory," the Plaintiff's actions such as voicing multiple workplace safety concerns, posting a workplace discrimination post on her private Facebook page, voicing concerns of discrimination and possible facility fraud to an immediate supervisor, expressing unrequited love for a coworker and writing a letter to a woman regarding her safety did not meet the "clear and present danger" test and violated the Plaintiff's First Amendment right to Freedom of Speech.[1]

The "clear and present danger" test is a basic principle for deciding the limits of free speech. It was set by the *Schenck v. the United States* case from World War I.  Antiwar activist Charles Schenck was arrested for sending leaflets to prospective army draftees encouraging them to ignore their draft notices. The United States claimed that Schenck threatened national security, and the justices agreed. The principle was established that free speech would not be protected if an individual were a "clear and present danger" to United States security.

The First Amendment protects several basic liberties and cherished values— freedom of religion, speech, press, petition, and assembly.    Free speech is one of the most cherished First Amendment liberties, but free speech often conflicts with other rights and liberties. The courts have had to consider the question,  "What are the limits of free speech?"

**Freedom of Speech includes:**

- The right not to speak (specifically, the right not to salute the flag).  *West Virginia Board of Education v. Barnette*, 319 U.S. 624 (1943).

---

[1]First Amendment Rights Against Invasion of Privacy and Right to Personal Autonomy are Closely Tied to Pennsylvania Defamation of Character, Libel, Slander Laws-  (see CLAIM FIVE)

- The right of students to wear black armbands to school to protest a war ("Students do not shed their constitutional rights at the schoolhouse gate."). *Tinker v. Des Moines,* 393 U.S. 503 (1969).
- The right to use certain offensive words and phrases to convey political messages  *Cohen v. California,* 403 U.S. 15 (1971).
- The right to contribute money (under certain circumstances) to political campaigns *Buckley v. Valeo,* 424 U.S. 1 (1976).
- The right to advertise commercial products and professional services (with some restrictions). *Virginia Board of Pharmacy v. Virginia Consumer Council,* 425 U.S. 748 (1976); *Bates v. State Bar of Arizona,* 433 U.S. 350 (1977).
- The right to engage in symbolic speech, (e.g., burning the flag in protest). *Texas v. Johnson,* 491 U.S. 397 (1989); *United States v. Eichman,* 496 U.S. 310 (1990).

**Freedom of speech does not include the right:**

- To incite actions that would harm others (e.g., "shouting 'fire' in a crowded theater."). *Schenck v. United States,* 249 U.S. 47 (1919).
- To burn draft cards as an anti-war protest. *United States v. O'Brien,* 391 U.S. 367 (1968).
- To permit students to print articles in a school newspaper over the objections of the school administration. *Hazelwood School District v. Kuhlmeier,* 484 U.S. 260 (1988).
- Of students to make an obscene speech at a school-sponsored event.  *Bethel School District #43 v. Fraser,* 478 U.S. 675 (1986).
- Of students to advocate illegal drug use at a school-sponsored event.  *Morse v. Frederick, 551 U.S.393* (2007).

**B.      CLAIM TWO- FOURTEENTH AMENDMENT**

Even assuming that the stated reasons for the termination were factually accurate and not "pretextual," the Plaintiff was denied due process of law and equal protections under the law by the Defendants in violation of the Plaintiff's Fourteenth Amendment rights.  In support of this motion, the Plaintiff is offering supporting evidence in the form of other civil service adjudications from public records which clearly show that the Plaintiff was not treated fairly and equally to other Appellants. Plaintiff was deprived of "life, liberty, or property," without due process of law and equal protection of the law when her termination was upheld without any progressive disciplinary process such as a one or three day suspension and when a metal detector was purchased for the purpose of her appeal hearing.

Civil Service Commissioners agreed that the Plaintiff's off duty conduct was so "egregious" that it required immediate termination without progressive discipline.  The Plaintiff's off duty conduct

included such things as allegedly "sexually harassing" a coworker after he changed his mind about going on a date with her, and voicing concerns about such topics as workplace safety and discrimination.   Civil Service Commissioners on at least three other occasions have allowed progressive discipline in instances involving much more serious and "egregious" behavior involving workplace violence, patient abuse and neglect.  These other offenses committed against vulnerable disabled and elderly patients, the Commissioners find much less serious than the Plaintiff telling a coworker that she loved him and voicing safety concerns for and to other people.

The Due Process Clause of the 14th Amendment states:  "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

**Fourteenth Amendment Right to Procedural Due Process** protects individuals from the coercive power of government by ensuring that adjudication processes, under valid laws, are fair and impartial. Such protections, for example, include sufficient and timely notice on why a party is required to appear before a court or other administrative body, the right to an impartial trier of fact and trier of law, and the right to give testimony and present relevant evidence at hearings.

**Fourteenth Amendment Right to Substantive Due Process:**  In United States constitutional law, Substantive Due Process is a principle allowing courts to protect certain fundamental rights from government interference, even if procedural protections are present or the rights are not specifically mentioned elsewhere in the US Constitution.   Courts have identified the basis for such protection from the due process clauses of the Fifth and Fourteenth Amendments to the Constitution, which prohibit the federal and state governments from depriving any person of "life, liberty, or property, without due process of law."

5

Substantive due process protects individuals against policy enactments that exceed the limits of governmental authority: courts may find that an enactment is not law and cannot be enforced as such, regardless of whether the processes of enactment and enforcement were actually fair.  Substantive due process demarcates the line between acts that courts hold are subject to government regulation or legislation and acts that courts place beyond the reach of governmental interference. *("The One and Only Substantive Due Process Clause". Yale Law Journal. 120: 408–512. Williams, Ryan. (2010.))*

In examining whether (or not) a challenged government action violates an individual's substantive Due Process, the first step is to determine whether the right at issue is a "fundamental" right, i.e., one that is either "deeply rooted in this Nation's history and tradition, or implicit in the concept of ordered liberty such that neither liberty nor justice would exist if they were sacrificed." *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007).  There can be no reasonable dispute that the rights asserted by the Plaintiff in this case---the right to voice concerns about the safety of other people without being retaliated against--- are  "fundamental" rights under the Fourteenth Amendment.


**Facts in Support of this Claim:**

1)    Although they saw no reason for it, the Defendants accommodated Defendant Barbara Raymond by allowing a metal detector to be purchased for the purpose of the Plaintiff's appeal hearing, but they did not accommodate the Plaintiff by investigating her allegations of whistleblower retaliation and pretextual grounds for termination  This unequal accommodation and treatment violated the Plaintiff's right to due process and equal protection under the law.

2)    At the hearing and in their Adjudication, the Pennsylvania Civil Service Commissioners made note of the Plaintiff's report to the PA Office of the Attorney General, and made reference to "deficiencies," but did not expand on or further investigate the Plaintiff's allegations or convene another hearing to admit the evidence.    This violated the Plaintiff's right to due process of law.

6

3)      In SCSC Adjudications 28713 another Civil Service nurse employed by the Department of

Military and Veterans Affairs was only given a three day suspension on charges involving "neglect of

duty," "poor work performance," and "unauthorized behavior" including an incident of workplace

violence.    In that Adjudication, after finding the nurse guilty, the SCSC Commissioners upheld the

three day suspension.   The Civil Service Commission retained the nurse, and subsequently transferred

the "incompetent" nurse to another agency, (the Department of Human Services.) This three day

suspension  was a far less hostile disciplinary action than the Plaintiff's termination for what she said in

off duty text messages.    Disciplining the Plaintiff more severely than a nurse found by them to be

guilty of incompetence and workplace violence violated the Plaintiff's right to equal protection and due

process. The Commissioners made no attempt to treat the Plaintiff equally by decreasing the Plaintiff's

discipline to a lesser degree, such as a three day suspension.

4)      SCSC Adjudication 28701 claims that another  Civil Service nurse employed by Department

of Human Services committed "patient neglect," "non physical patient abuse," and "exploitation."

After being found guilty of these very serious charges, that nurse was transferred to another agency, the

Department of Military and Veterans Affairs, and subsequently promoted to a nurse educator position,

despite being found guilty by the SCSC Commissioners of patient neglect, abuse and exploitation.[2]

This three day suspension for patient abuse was a far less hostile disciplinary action than the Plaintiff's

termination for what she said in off duty text messages.  Treating a nurse who they had found guilty of

"patient abuse" more favorably than they disciplined the Plaintiff has violated the Plaintiff's right to

equal protection and due process.   The Commissioners made no attempt to treat the Plaintiff equally by

decreasing the Plaintiff's discipline to a lesser degree, such as a three day suspension.

5)      SCSC Adjudication 29007 claims that a Psychiatric Aide was found guilty of "negligent patient

---

[2]There is no indication in SCSC Adjudication 28701 that patient neglect, abuse and exploitation was reported by the SCSC
commissioners to the proper regulatory authorities for investigation, and if so what the outcome of that investigation was.

abuse," and his one day suspension was upheld.[3]   Treating a civil servant who they had found guilty of "negligent patient abuse" more favorably than they disciplined the Plaintiff has violated the Plaintiff's right to equal protection and due process.

## C.  CLAIM THREE- RETALIATION ~~IN VIOLATION OF OSH Act.of 1970~~

## D.  CLAIM FOUR- WHISTLEBLOWER RETALIATION ~~IN VIOLATION OF 43 Pa. CS §§ 1421-28;  35 PS §10225.302.006; Pa Code §15.22~~[4]

<u>The pro se Plaintiff now realizes that there is no private action available under the OSH Act of 1970,  and wishes to consolidate Claim Three and Claim Four to merely, "UNLAWFUL WHISTLEBLOWER RETALIATION IN VIOLATION OF FEDERAL AND STATE LAW."</u>

In *Carvalho-Grevious v. Delaware State University*, No. 15-3521 (March 21, 2017), the Third Circuit Court of Appeals addressed an important evidentiary question: What evidence must a plaintiff adduce as part of a prima facie case of retaliation to survive a motion for summary judgment?  The court held that a plaintiff alleging retaliation has a lesser burden at this stage, namely to produce sufficient evidence to raise the inference that the protected activity was the "likely reason" for the adverse employment decision.

In deciding whether an employee has shown causation, the Third Circuit focuses on two factors: (1) the temporal proximity between the protected activity and the adverse action, and (2) the existence of a pattern of antagonism in the intervening period. *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006). Courts may also consider the record as a whole to determine whether a retaliatory motive can be inferred. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000).

---

3

There is no indication in SCSC Adjudication 29007 that the negligent patient abuse was reported by the SCSC commissioners to the proper regulatory authorities for investigation, and if so what the outcome of that investigation was. 4Also, the Pennsylvania Whistleblowers Law (PWL) provides "protection for employees who report a violation or suspected violation of State, local or Federal law." Intro. Para. of Act of Dec. 12, 1986, P.L. 1559, No. 169. That protection extends to all employees who are employed by a "public body." 43 P.S. § 1423. The PWL defines a "public body" in relevant part, as "[a]ny other body which is . . . funded in any amount by or through Commonwealth or political subdivision authority." Id. § 1422.

In the book *The Whistleblower's Handbook: A Step-by-Step Guide to Doing What's Right,*" author Stephen Kohn lists general categories of facts or circumstances that are used to establish a reasonable inference that the discharge was discriminatory.  All of these factors are demonstrated in this case by a preponderance of evidence:

- employer's hostile attitude toward matter underlying employee's protected conduct;
- employer's knowledge of protected conduct;
- nature of protected conduct;
- disparate treatment of similarly situated employees;
- termination procedure;
- timing of discharge;
- retaliation against other employees for similar conduct;
- high work performance ratings prior to engaging in protected activity;
- inadequate investigation of the charge against the employee;
- discipline or termination shortly after employee engaged in protected activity;
- the magnitude of the alleged offense;
- absence of previous complaints against employee;
- differences in the way complainant and other employees were treated.

## E.  CLAIM FIVE- DEFAMATION OF CHARACTER; LIBEL, SLANDER IN VIOLATION OF PA. CONS. STAT. §§ 8341-8345.

The Defendant's actions of publicizing manipulated excerpts from off duty text messages, without publicizing "both sides of the story,"  has caused the Plaintiff much mental suffering, embarrassment and humiliation.   When making the decision to "cherry pick" and only publish certain embarrassing information, without investigating the Plaintiff's claim of whistleblower retaliation, public interest *did not* outweigh the Plaintiff's right against unwarranted invasion of privacy.

The Defendants were clearly aware that the Plaintiff was terminated for off duty text messages which contained information regarding reports of elder abuse.  Defendants clearly acknowledged awareness of the Plaintiff's allegation of "retaliation," but did not publish the sections of the off duty Facebook messages which contained the references to the Plaintiff's whistleblower activity.  Their actions are humiliating and embarrassing to the Plaintiff, as they would be to any sensible person.

In the United States, federal defamation law is closely tied to the First Amendment. Pennsylvania defamation laws adhere to federal standards. The Supreme Court of Pennsylvania has held that "individuals have a constitutional right to privacy in their home addresses under Article 1, Section 1 of the Pennsylvania Constitution" and that individuals have a right to "informational privacy" which may not be violated unless this right is outweighed by a public interest favoring disclosure. *Pennsylvania State Education Association v. Commonwealth*, 2016 Pa. 2337, 2016 WL 6087684, (2016). (*PSEA*)  In *PSEA*, the Court held that in identifying rights to informational privacy under the Pennsylvania Constitution, it applies the broader array of rights granted to citizens under Article 1, Section 1, which is entitled "Inherent rights of mankind:"  All men are born and equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness. Pa. Const. Art. 1, § 1  The Court explained that Article 1, Section 1 of the Pennsylvania Constitution provides even "more rigorous and explicit protection for a person's right to privacy" than does the United States Constitution. Under the prior Right to Know Act, 65 P.S. §§ 66.1-66.4 (repealed, effective January 1, 2009) ("RTKA"), the Court had on three occasions ruled that certain types of information implicated the right to privacy under Article 1, Section 1 of the Pennsylvania Constitution, and thus required a balancing to determine whether the right to privacy outweighs the public's interest in dissemination. See *Sapp Roofing Company, Inc. v. Sheet Metal Workers' International Association*, 552 Pa. 105, 713 A.2d 627 (1998) *Pa. State Univ. v. State*

10

*Employees' Retirement Board,* 935 A.2d 530 (Pa. 2007); *Tribune-Review Publ. Co. v. Bodack,* 961 A.2d 110 (Pa. 2008). Based on this precedent, the Court concluded that the right to informational privacy is guaranteed by Article 1, Section 1 of the Pennsylvania Constitution, and may not be violated unless outweighed by a public interest favoring disclosure. In the *PSEA* case, the Court concluded that the balancing test established in *Sapp Roofing, Penn State* and *Bodack* applied and found that there was no public interest in procuring personal information about private citizens.

Pennsylvania courts invoke a statutory definition of Defamation of Character found in 42 Pa. Cons. Stat. §§ 8341-8345. It has been observed that the cause of action for invasion of privacy "'is not one tort, but a complex of four.'" *Vogel v. W.T. Grant Co.,* 458 Pa. 124, 129 n. 9, 327 A.2d 133, 136 n. 9 (1974). These four consist of (1) intrusion upon seclusion; (2) appropriation of name or likeness; (3) publicity given to private life; and (4) publicity placing a person in false light. This tort is defined at Restatement (Second) of Torts §§ 652A-E as follows:

**652A. General Principle**

(1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.
(2) The right of privacy is invaded by:

    (a) unreasonable intrusion upon the seclusion of another, as stated in 652B; or
    (b) appropriation of the other's name or likeness, as stated in 652C; or
    (c) unreasonable publicity given to the other's private life, as stated in 652D; or
    (d) publicity that unreasonably places the other in a false light before the public, as stated in 652E.

**652B. Intrusion upon Seclusion**

One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

11

**652C. Appropriation of Name or Likeness**

One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy.

**652D. Publicity Given to Private Life**

One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that

   (a) would be highly offensive to a reasonable person, and
   (b) is not of legitimate concern to the public.

**652E. Publicity Placing Person in False Light**

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

   (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
   (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

   To constitute a tortuous invasion of privacy an act must "`cause mental suffering, shame or humiliation to a person of ordinary sensibilities.'" *Hull v. Curtis Publishing Co.*, 182 Pa.Super. 86, 99, 125 A.2d 644, 646 (1956), quoting *Smith v. Doss*, 251 Ala. 250, 252-253, 37 So. 2D 118, 120-121 (1948).  An action for invasion of privacy will ordinarily be an adequate remedy for highly offensive conduct which unreasonably interferes with another's right to be left alone. *Cf. Standard Pipeline Coating Co. v. Solomon & Teslovich, Inc.*, 344 Pa.Super. 367, 496 A.2d 840 (1985).

   The right to privacy against publication of personal information is a fundamental human right. The U. S. Constitution contains no express right to privacy.  The Bill of Rights, however, reflects the concern of James Madison and other framers for protecting specific aspects of privacy, such as the 5th Amendment's privilege against self-incrimination, which provides protection for the privacy of personal information.   In addition, the Ninth Amendment states that the "enumeration of certain rights" in the Bill of Rights "shall not be construed to deny or disparage other rights retained by the people."

12

Justice Goldberg, in his *Griswold* concurrence, interpreted the Ninth Amendment as justification for broadly reading the Bill of Rights to protect privacy in ways not specifically provided in the first eight amendments. *Griswold v Connecticutt* U.S. Supreme Court 381 U.S. 479 (1965)

## F. CLAIM SIX- INFLICTION OF MENTAL ANGUISH/ HUMILIATION

The hostility demonstrated by the Defendants caused the Plaintiff to suffer a complete psychotic breakdown, which was so obvious that it was noticed by the attorney for the Defendant Pennsylvania Department of Military and Veterans Affairs, causing that attorney to set in motion a petition by the Pennsylvania Bureau of Professional and Occupational Affairs to the Pennsylvania Board of Nursing for a psychiatric evaluation of the Plaintiff.

Two years ago, the Plaintiff was a mentally strong woman at the time that she became concerned about resident-resident sexual assaults and other quality of care and regulatory compliance issues at the the Pennsylvania Soldiers and Sailors Home, and reported those concerns to the Assistant Director of Nursing, her immediate supervisor, the Department of Military and Veterans Affairs and eventually to the Pennsylvania Department of Health and Pennsylvania Office of the Attorney General.

Uncapped emotional distress damages are recoverable under 42 U.S.C. '1983. *Hafer v. Melo*, 502 U.S. 21, 31 (1991) Compensatory damages are available under Section 1983 against state and local officials sued in their individual capacities. *Will v. Michigan Dept. of State Police*, 491 U.S. 58., 71 (1989); Hafer, 502 U.S. at 31.  Emotional distress damages are available even where the plaintiff has not sought medical treatment. A Medical testimony, although relevant, is not necessary. . . . the plaintiff's own testimony may be sufficient to establish humiliation or mental distress. *Williams v. TWA*, 660 F. 2d 1267 (8th Cir. 1981). See also *Hammond v. Northland Counseling Center*, 218 F.3d 866 (8th Cir. 2000); *Ross v. Douglas County*, Nebraska, 234 F. 3d 391 (8th Cir. 2000). The U.S. Supreme Court has noted with respect to emotional distress damages that a genuine injury in this respect may be evidenced by one's conduct and observed by others. *Carey v. Piphus*, 435 U.S. 247, 264 n. 20 (1978).

13

The Eighth Circuit has held that a plaintiff's own testimony may be adequate to support such an award and the testimony of family and friends is also probative. *Kucia v. Southeast Arkansas Community Action Corp.*, 284 F. 3d 944, 947 (8th Cir. 2002) (plaintiff's own testimony enough); *Morse v. Southern Union Co.*, 174 F. 3d 917, 925 (8th Cir. 1999) (affirming $100,000 emotional distress award where family members corroborated plaintiff's testimony); *Kim v. Nash Finch Co.*, 123 F. 3d 1046, 1065 (8thCir. 1997) ( award of $100,000 affirmed where plaintiff, his wife and his son testified regarding anxiety, sleeplessness, stress, depression, high blood pressure, headaches and humiliation).

## G.  CLAIM SEVEN- WRONGFUL TERMINATION

Although the Defendants were aware that the Plaintiff claimed to be a whistleblower protected by Pennsylvania Statute, Defendant's did not further investigate the Plaintiff's allegation and discharged the Plaintiff for performing a statutorily imposed duty, even when they were specifically prohibited from doing so by statute. (Whistleblower Statutes.)  The Plaintiff's termination offended a clear mandate of Pennsylvania Public Policy.  The public policy exception to the presumption of at-will employment applies when an employer: (1) requires an employee to commit a crime; (2) prevents an employee from complying with a statutorily imposed duty; and (3) discharges an employee when specifically prohibited from doing so by statute. *Spierling v. First Am. Home Health Servs., Inc.*,737 A.2d 1250, 1252 (Pa. Super. 1999); *Hennessy v. Santiago*, 708 A.2d 1269, 1273 (Pa. Super. 1998).

The Plaintiff's wrongful discharge claim fits within these three exceptions.   Although the Defendants were aware that the Plaintiff claimed to be a whistleblower protected by Pennsylvania Statute, a preponderance of evidence shows that Defendant's discharged the Plaintiff for performing a statutorily imposed duty, even when they were specifically prohibited from doing so by statute.

## H. CLAIM EIGHT- MERITLESS DENIAL OF UNEMPLOYMENT COMPENSATION

Even assuming that the stated reasons for the termination were factually accurate and not

14

"pretextual," the Plaintiff's conduct did not rise to the level of "willful misconduct."

Plaintiff was terminated for allegedly violating several of the employer's rules with off duty conduct in violation of workplace violence and sexual harassment policies. "Loving" a coworker does not equate to "willful misconduct" under §402(e). The off duty conduct did not affect the Plaintiff's ability to perform her job. Off-duty conduct does not support a finding of willful misconduct under §402(e) unless it extends to performance on the job; in such case, the misconduct becomes work-related. An employee can be denied unemployment compensation if terminated for conduct outside of the workplace only if they engaged in unacceptable conduct for which they were at fault and if this conduct negatively affects their ability to properly do their work (*Martin v. UCBR*, 713 A.2d 753 (1998)). On December 31, 2015, Barry Blasic told the Plaintiff that he had been "emasculated" by his estranged wife and was suffering from depression and anxiety attacks. The Plaintiff testified that she acted with the good cause of attempting to raise his self esteem and to make him feel cared about, loved and wanted. The Plaintiff should still have received unemployment compensation by showing that she had good cause for her actions (*McLean v. UCBR*, 476 Pa 617 (1978)).

The employer did not uniformly apply its own rules and/or handbook policies when they terminated the Plaintiff's employment. The Plaintiff admitted to a minor violation of the Information Technology Acceptable Usage Policy by emailing a postal tracking number to Barry Blasic. This was motivated by the good cause of providing a courtesy to Barry Blasic. In a letter dated May 10, 2016, Attorney Bushinski stated that no other employees had ever been disciplined for such conduct. For violation of a rule to be "willful misconduct", the rule must be fairly and consistently applied (*Spirnak v. UCBR*, 557 A.2d 451 (1989)). The employer has tolerated this rule-breaking by other employees in the past. The Plaintiff's act of emailing a postal tracking number to a coworker as a courtesy should not have been considered "willful misconduct." Defendants should have allowed the Plaintiff to admit evidence that she was NOT the cause of Barry Blasic's mental health and attendance issues. **Exh. P-29**

15

## I.  CLAIM NINE- DISABILITY DISCRIMINATION. FAILURE TO ACCOMMODATE

Defendants were very much aware of the Plaintiff's allegation to suffer from a stress disorder, yet because the Plaintiff had voiced workplace safety concerns they chose to intimidate the Plaintiff with the use of a metal detector at the appeal hearing, for no other reason except to accommodate the wishes of another state government agency defendant to intimidate the Plaintiff.

Title II, §§12131—12134, prohibits any public entity from discriminating against "qualified" persons with disabilities in the provision or operation of public services, programs, or activities. The Act defines the term "public entity" to include state and local governments, as well as their agencies and instrumentalities. §12131(1). Persons with disabilities are "qualified" if they, "with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meet the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." §12131(2). Title II's enforcement provision incorporates by reference §505 of the Rehabilitation Act of 1973, 92 Stat. 2982, as added, 29 U.S.C. § 794a which authorizes private citizens to bring suits for money damages. 42 U.S.C. § 12133.

## II.      CLOSING ARGUMENT

It has now been two years since November 2015, which was when the PA Department of Health cited the Pennsylvania Soldiers and Sailors Home with multiple deficiencies.  This was the event that led Defendant Barbara Raymond to accuse most of the facilty nurses with "neglect of duty."  That false accusation was what compelled the Plaintiff to counter with an accusation of "contributory facility neglect," and to voice concerns to the PA Department of Health, to the Assistant Director of Nursing, to her immediate supervisor, to the Director of Nursing, and to the PA Office of the Attorney General. That complaint resulted in further citations by the PA Department of Health in December 2015.

If this case proceeds to trial, Plaintiff will submit evidence in the form of public records and public Facebook postings that will show beyond a reasonable shadow of a doubt the following:

1)      For the past two years, there have been many problems with quality of care and a history of sexual abuse and other forms of abuse to the residents who live in the six nursing homes operated by the Department of Military and Veterans Affairs.

2)      In 2016, although required by law to self report, Defendant Barbara Raymond chose not to self report a pattern of theft from residents at the Pennsylvania Soldiers and Sailors Home.

3)      In 2016, DMVA was honest in their testimony before the House Appropriations Committee regarding problems with quality of care at their nursing homes, particularly the Gino Merli Home, but in 2017, General Anthony Carrelli alluded that there was a good quality of care at the nursing homes "based on family surveys."

4)      In 2015, Barry Blasic was going through a contentious divorce after his wife committed adultery.  Public Facebook postings made by Barry Blasic in August 2015 show that he claimed to be suffering from insomnia and anxiety as a result of arguing with his estranged wife, mainly on the issue of who would have child custody and visitation on the weekends. (Barry Blasic worked 13 hour shifts on most weekends of the month, which was when his estranged wife wanted for the teenage children to be in his custody, forcing him to choose between going to work or being with his children.)

In their response to this motion, the Plaintiff hereby asks the Defendants to disclose the attendance record, performance evaluations and disciplinary history of Barry Blasic while he was in their employ.  The Plaintiff alleges that these records will prove beyond a shadow of a doubt that Barry Blasic's poor attendance issues began long before the Plaintiff's alleged conduct towards him, and that the more likely cause for his mental health issues and attendance issues was his contentious divorce and the conduct of his ex wife, not the Plaintiff.  Barry Blasic resigned from PSSH on or about January 2017.  If this case proceeds to trial, the Plaintiff will subpoena Barry Blasic for his testimony.

17

Two years ago, the Plaintiff as a nurse, patient advocate and mandatory reporter began to voice many concerns about the quality of care being given to the vulnerable elderly and disabled residents of the Pennsylvania Soldiers and Sailors Home, up to and including concerns of facility contributory elder abuse and neglect.   The Plaintiff began to voice workplace safety concerns regarding the culture of administrative bullying at the Pennsylvania Soldiers and Sailors Home, which the Plaintiff feared may one day result in an act of gun violence if the "wrong" person was bullied by administration.

Barry Blasic was at risk of losing his job at the Pennsylvania Soldiers and Sailors Home, due mostly to attendance issues.   Barry Blasic did not complain about the Plaintiff to administrators, but voiced his concerns to coworkers.   Barry Blasic testified that he was aware that the Plaintiff was the employee who had made anonymous complaints to the Pennsylvania Department of Health and to the Pennsylvania Office of the Attorney General.

The actual reason that the Plaintiff was terminated from the Pennsylvania Soldiers and Sailors Home in March 2016 was because she had voiced too many concerns for the vulnerable elderly and disabled residents, and too many concerns about workplace safety and possible discrimination. Barbara Raymond exploited Barry Blasic and the crisis in his personal life and used him as the vehicle to eliminate the Plaintiff from the workplace.   Barry Blasic in turn took advantage of his new status as the "star witness for the Defendants," and used the situation to save his job until such time that he resigned in January 2017, after regularly complaining for several years about poor quality of care issues and inadequate, (but legal,) staffing levels at the Pennsylvania Soldiers and Sailors Home.

It has now been two years since poor annual inspection by the Pennsylvania Department of Health that resulted in these proceedings.   The defendants have made it abundantly clear that they will not entertain any offers from the Plaintiff to enter a settlement agreement.   The Plaintiff had wished to petition this Court to obtain injunctive relief from this Court to protect the vulnerable elderly and disabled residents who live in DMVA nursing homes, and to protect the healthcare workers who on a

18

daily basis lovingly care for and do their best to provide for the most basic human needs of their patients.  Upon researching the law regarding obtaining an injunction, the Plaintiff finds that she cannot prove to this Court that she personally would suffer irrreperable harm in the absence of injunctive relief.  However, the Plaintiff did file this lawsuit on behalf of herself and others similarly situated.

### III.   CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that this Court enter Partial Summary Judgment in favor of the Plaintiff and a permanent injunction prohibiting retaliation against similarly situated healthcare workers at the six nursing homes operated by the Department of Military and Veterans Affairs, who might wish to report elder abuse or neglect, but fear doing so because they fear losing their job or being otherwise punished.

Plaintiff demands that her personnel record be expunged to remove any reference to the discipline and to provide only a positive or neutral job reference.

Plaintiff demands back pay and benefits from March 2, 2016 until date of said judgment.

Due to the past, present and expected future hostility shown by the Defendants towards the Plaintiff, the Plaintiff demands front pay and benefits from the date of the judgment until the Plaintiff turns age 70, (March 4, 2036.)

Plaintiff demands any and all other compensatory damages and relief in the maximum amount that she is entitled to by law as determined to be fair and equitable by the wisdom and discretion of this honorable Court.

Respectfully submitted,

_Nancy E. Lewen_      11 / 3 / 2017

Nancy E. Lewen, pro se, Plaintiff

19

**Certificate of Service**

   I hereby certify that on the ___3ʳᵈ___ day of ___November___, 2017, a true and correct copy of the foregoing NOTICE and MOTION FOR PARTIAL SUMMARY JUDGEMENT was sent by U.S. First Class Mail to Deputy Attorney General Michael E. Kennedy, counsel for all defendants.

Nancy E. Lewen, pro se, Plaintiff
3342 West 12ᵗʰ Street
Erie, PA 16505

20