IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA



FILED

NOV -3 2017

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

| | |
|---|---|
| Nancy E. Lewen, ) | |
| ) | |
| Plaintiff, ) | No. 1:17 CV 00148 |
| vs. ) | |
| ) | |
| Pennsylvania Soldiers and Sailors Home, *et al.* ) | |
| ) | Magistrate Judge Susan Paradise Baxter |
| Defendants, ) | |

## CONCISE STATEMENT OF MATERIAL FACTS
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**There is no dispute of material fact on the following issues:**

1) Plaintiff was a civil servant employed as a Licensed Practical Nurse by the Pennsylvania Soldiers and Sailors Home and was terminated in March 2016.

2) Prior to the termination, the Plaintiff had demonstrated good job performance. **Exh. P-12** [1]

3) The grounds for the Plaintiff's immediate termination were based on 1) a letter that the Plaintiff wrote to a coworker's estranged wife. **Exh. P-15** 2) excerpts from off duty Facebook messages that the Plaintiff sent to coworker, Barry Blasic. **Exh. P-16** 3) an email that the Plaintiff sent to Barry Blasic from her work email account to his work email account containing a postal tracking number. **Exh. P-17** 4) a letter that the Plaintiff gave to her immediate supervisor about gender discrimination, regulatory compliance concerns and possible facility fraud in the way staffing levels were being reported. **Exh. P-18** and 5) the Plaintiff's concerns that she voiced about potential for workplace violence following an incident of workplace violence against her by a supervisor. **Exh. P-19**

---

[1] Exhibit P-12 was previously submitted with Brief in Support of Motion for Preliminary Injunction. DOC# 41

4) Plaintiff filed for civil service appeal of that termination on the grounds of "Failure to Show Good Cause," and "Whistleblower Retaliation." **Exh. P-20**

5) Hearing was held at the Pennsylvania Soldiers and Sailors Home on June 13, 2016.

6) Although it is not usually done, Commissioners accommodated the other Defendant's request for a metal detector to be purchased for use at the Plaintiff's appeal hearing. **Exh. P-21**

7) Plaintiff did not testify or submit any evidence at the appeal hearing, other than to jointly submit the complete off duty text messages in their entirety as evidence. **Exh. P-22**

8) It is an undisputed fact that the reason that the Plaintiff did not submit evidence or testify is in dispute. Plaintiff contends that she was denied the opportunity. Defendants contend that Plaintiff filed the appeal, but on the day of the hearing she "refused" to testify or submit evidence.

9) The transcript from the Civil Service appeal hearing is 230 pages long. **Exh. P-23**

10) The Facebook messages in their entirety are 54 pages long, and contain mostly non work related day to day topics and "nonsense," including information about online dating from the Plaintiff to Barry Blasic, and sexual innuendos. The Facebook messages also contained work related information that the Plaintiff had confided to Barry Blasic regarding her concerns for the facility's noncompliance with regulations, information that she had discussed with her immediate supervisor, her complaints of elder abuse, neglect and quality of care issues that she had made to the PA. Department of Health and the PA Office of the Attorney General. **Exh. P-22 Page 10, 11, 20, 21, 22, 23, 46, 47, and 48.**

11) In the Facebook messages that were used as grounds for the Plaintiff's termination, on December 31, 2015, Barry Blasic told the Plaintiff that he had been "emasculated" by his estranged wife and was suffering from depression and anxiety attacks. **Exhibit P-22- Page 45.**

12) Now retired Commissioner/Hearing Officer David Zurn said of the Facebook messages, "*It's a lot of hearsay. As long as you agree on it being made a part of the record we're going to put it in.*" **Exh. P-23, page 19 lines 22-25.**

2

13) The Plaintiff stated for the record, *"it's agreeable, as long as a complete record is submitted."* **Exh. P-23, page 20, lines 13-14.**

14) Five witnesses were called by the defendants to testify under oath, which were Bryan Bender, Barry Blasic, Brian Skinner, Raymond Hamm, and Kathleen Wilcox. **Exh. P-23 page 4.**

15) Witness Bryan Bender is a Human Resources Analyst 3 employed by Defendants DMVA. His testimony is recorded from pages 20-86 of the transcript. Bryan Bender was questioned by DMVA Attorney Stephen J. Bushinski. The majority of Bryan Bender's testimony was explaining the various policies that the Plaintiff had allegedly violated, and detailing the history of the pre termination investigation that was conducted prior to terminating the Plaintiff.

16) Bryan Bender testified that it had been Barbara Raymond and PSSH HR Analyst Brian Skinner who had originally contacted him with the allegations of misconduct against the Plaintiff. **Exh. P-23 page 25 lines 5-25.**

17) On Page 39 line 2, Attorney Bushinski changed line of questioning to the topic of "progressive discipline," which continued through page 41. Bryan Bender testified that progressive discipline had been discussed, but decided against. *"It was based on the incident at hand, the egregiousness of it, the fact of the hostile work environment, the harassment, the intimidation and bullying. You know, those things coupled together it just ---it created such a disturbance in the workplace that we felt as a whole that it was within our best interests to part ways."* **Exh. P-23 lines 14-22**

18) On page 78 line 20 of the transcript, Attorney Bushinski changed the subject of the questioning to the topic of whistleblower retaliation. Attorney Bushinski questioned Bryan Bender from page 78 line 20 through page 80 line 24 as to if he had any knowledge at the time of termination that the Plaintiff had filed complaints of elder abuse and neglect to the Pennsylvania Department of Health and the Pennsylvania Office of the Attorney General. Bryan Bender denied having had knowledge of the Plaintiff's whistleblower activity during her pre termination investigation.

3

19) The Plaintiff cross examined Bryan Bender and asked, *"In these Facebook messages you definitely were not aware of all of the content of it; right?"* **Exh. P-23 page 85 lines 10-13.** Bryan Bender responded, *"Initially no. We were made aware of them later."* **Exh. P- 23 page 85 lines 14-15.**

20) Witness Barry Blasic is a former employee of the Pennsylvania Soldiers and Sailors Home, who brought the off duty Facebook messages to the attention of coworkers.

21) Barry Blasic's testimony begins on page 86 and concludes on page 133 of the transcript.

22) Barry Blasic's testimony was mostly on the Plaintiff's behavior that had compelled him to complain to coworkers.

23) On page 117 lines 10-13, Attorney Bushinski asked, *"You had never actually sat down and filed a formal written complaint about sexual harassment from Nancy Lewen; correct?* At page 117 line 14, Barry Blasic replied, *"That's correct."* (On March 7, 2016, Barry Blasic typed a statement. **Exh. P-16)**

24) On page 120 line 6, Attorney Bushinski changed the topic of questioning to the Plaintiff's whistleblower retaliation allegation. At page 120 lines 16-21, Attorney Bushinski stated, *"That's what she's claiming."* Attorney Bushinski asked the question, *"Do you recall whether Ms. Lewen had ever discussed making complaints to the Department of Health and the Attorney General's Office with you by means of Facebook messages."* At line page 120 line 22, Barry Blasic answered, *"yes."* At Page 120 line 23 through page 121 line 5, Attorney Bushinski continued, *"Did you ever tell anyone at the Pennsylvania Soldiers and Sailors Home that Ms. Lewen had made a referral of resident abuse or resident neglect to the Commonwealth of Pennsylvania, Department of Health or the Commonwealth of Pennsylvania, Office of the Attorney General?"* At page 121 line 6, Barry Blasic testified, *"No."*

25) Regarding "dating" the Plaintiff, Barry Blasic testified, *"The reason that I stopped responding was because I had agreed to go to the museum with her and in her own words merely as friends at the time. And shortly after that her response was that she was very happy that I had decided to go on a date. And I was very put off by that, so I believe it was right around that time that I just stopped*

4

*responding to any of her communications."* **Exh. P-23 page 94, lines 2-13.**

26) Barry Blasic further testified, *"We did have a conversation at that time when she came in to relieve me and a lot of it was precipitated by the communications, the previous communications, and also by the fact of her appearance when she came in. It was very obvious that —to me that she was, you know, trying to get my attention in that way. And I at that time attempted to explain as diplomatically as possible that that — you know, she and I were not on the same page. And I was not interested in a relationship.* **Exh. P-23 page 96, lines 5-18.**

27) It was agreed during cross examination of Barry Blasic by the Plaintiff on pages 130-131 of the transcript that the parties worked different shifts, and saw each other "infrequently" at the workplace.

28) Barry Blasic resigned from Pennsylvania Soldiers and Sailors Home on or about January 2017.

29) No attendance record, performance record, or any hard evidence was submitted in support of Barry Blasic's verbal testimony that it was the Plaintiff's conduct, and not other factors in his life such as his divorce, that had caused his inability to go to work and other mental health symptoms.[2]

30) In her (later) request for reconsideration of the adjudication, Plaintiff submitted evidence to the State Civil Service Commission that had been mailed to her by an unknown party and was not available at the time of the hearing. The evidence showed that Barry Blasic had possibly committed perjury in his testimony, and that the more likely reason for his increased absences was because he had entered a romantic relationship with a woman and had taken a second job at the Erie County Prison.

31) Witness Brian Skinner is a Human Resource Analyst 2 employed at the Pennsylvania Soldiers and Sailors Home. Brian Skinner was questioned by Attorney Bushinski, and his testimony is at pages 135-144 of the transcript, mainly on the subject of employee training and policies.

32) On page 144 line 18-19, the Hearing Officer asked the Plaintiff if she had any questions for Mr. Skinner. At page 144 lines 21-25, the Plaintiff responded, *"I don't have questions for him, but I would*

---

2  Plaintiff alleges to have evidence proving that B.B.'s mental health issues were actually caused by the contentious divorce proceedings that he was involved in, and had began *prior* to the Plaintiff sending off duty text messages to him.

*like to submit as evidence my attendance record, my performance evaluation. Is now an appropriate time to do that?"* On page 145 lines 2-4, the Hearing Officer responded, *"No. I'm going to allow you to do that when it's your turn to testify, yes."*

33) Witness Raymond Hamm is Registered Nurse supervisor at the Pennsylvania Soldiers and Sailors Home, and was the Plaintiff's immediate supervisor during her time of employment.

34) Raymond Hamm's testimony begins on page 146 of the transcript and ends on page 168.

35) Mr. Hamm's testimony was mainly on the subject of a "gender discrimination" letter that the Plaintiff gave to him, which is Exhibit P-18. Page 160 line 5 of the transcript, Raymond Hamm testified that he felt "shocked," by the letter.

36) On page 161 line 18 through page 162 line 16 Attorney Bushinski questioned Raymond Hamm as to if he had knowledge of the Plaintiff's whistleblower complaints to the Pennsylvania Department of Health and the Pennsylvania Office of the Attorney General. On page 162 lines 13 and 16, Raymond Hamm responded, *"no,"* as to whether he had any knowledge of the whistleblower complaints.

37) Witness Kathleen Wilcox was the Director of Nurses at the Pennsylvania Soldiers and Sailors Home. Her testimony begins on page 170 and ends on page 184 and is mostly in reference to the Plaintiff's conduct that she was terminated for, including an off duty Facebook post that she had made and workplace concerns that she had voiced to other employees in addition to Ms. Wilcox in a face to face meeting on February 25, 2016.

38) On page 174 line 24 through page 175 line 3, Attorney Bushinski asked Ms. Wilcox, *"All right. During your meeting with Ms. Lewen on February 25th of 2016, did she mention anything at all about getting a gun and shooting people at PSSSH?"* On page 175 line 4 through line 16, Ms. Wilcox responded, *"She did not. What she said was that a dayshift supervisor had yelled at her and asked if I ----if that supervisor had told me. And I had told her I wasn't certain if that supervisor had came in to*

*tell me about what happened. Ms. Lewen then said that they---that she forgave her, forgave the supervisor, but that the supervisors would need to be careful because anyone else could go to their vehicle and return with a gun and shoot them."*

39) On page 178 line 21 through page 179 line 11, Attorney Bushinski questioned Ms. Wilcox as to if she had any knowledge of the Plaintiff making complaints to the Department of Health or the Office of the Attorney General. Ms. Wilcox testified that she had not had that knowledge.

40) Defendants Odelfa Smith Preston, SCSC Commissioner, and Gregory M. Lane, SCSC Commissioner issued Adjudication #28947, entered on December 8, 2016, denying the Plaintiff's appeal and upholding the disciplinary action of termination from employment for violation of various workplace policies including "workplace violence," "sexual harassment," and "improper technology use." Commissioners did not accept the Plaintiff's allegation that she was motivated by a desire to raise Barry Blasic's self esteem. **Exh. P-24 page 29.**

41) Commissioners found the verbal testimony of Barry Blasic to be "credible." **Exh. P-26 page 27**

42) In their adjudication, Commissioners vaguely acknowledged in a footnote that the Plaintiff argued that her removal was motivated by retaliation for her having contacted the Department of Health about "deficiencies." **Exh. P-24 page 29, footnote** [3]

43) Plaintiff requested reconsideration of the Adjudication, and submitted new evidence that was not available at the time of the hearing, showing that coworker Barry Blasic had possibly committed perjury in his testimony.

44) The Plaintiff's request for reconsideration was denied by Defendant Bryan Lentz, Chairperson, on January 12, 2017. **Exh. P-25**

---

3   The referenced "deficiencies" were the November 2015 PA Department of Health annual inspection results and citations, which Plaintiff alleges was the precipitating event that caused Defendant Barbara Raymond to accuse facilty nurses of "Neglect of Duty," which compelled the Plaintiff to counter with an allegation of "Facility Contributory Neglect," and raise concerns to her immediate supervisor, and to the Department of Military and Veterans Affairs, and to the PA Department of Health, and to the PA Office of the Attorney General. This resulted in further "deficiencies" in December 2015 from the Plaintiff's anonymous complaint to the PA Department of Health.

7

45)     Plaintiff did not petition the Commonwealth Court for review by January 8, 2017, (to meet the required 30 day statute of limitations following the Adjudication on December 8, 2016.)

46)     Defendants have at no time accused the Plaintiff of, or found her guilty of, "neglect of duty," "poor work performance," "patient neglect," "patient abuse," "patient exploitation," "negligent patient abuse," or any other violations involving her performance as a nurse and her treatment of patients.

47)     Defendants have at no time submitted any evidence or testimony that the Plaintiff touched any coworker inappropriately, either in a sexual manner or in a violent manner, on or off duty.

48)     In a letter dated May 10, 2016, Attorney Bushinski stated that no other employees had ever been disciplined for violating the Information Technology Acceptable Usage Policy. **Exh. P-26**

49)     Defendants did not at any time offer to decrease the severity of the Plaintiff's discipline to a lesser punishment other than permanent separation from Civil Service employment without any progressive discipline, (such as a one day suspension or a three day suspension.)

50)     In a different SCSC Adjudication on Appeal #28713, entered on December 12, 2016, Appellant R.S. was found guilty of "neglect of duty," "poor work performance," and "unauthorized behavior" including an incident of workplace violence. Her three day suspension was upheld. In this case, the Appellant alleged that she was the victim of retaliation because she had reported patient neglect and unsafe practices to PA Department of Health after she refused to falsify patient records. After finding her guilty of such serious charges, the Pennsylvania State Civil Service Commission transferred the Appellant to another state government agency.

51)     In a different SCSC Adjudication on Appeal #28701, entered on April 3, 2017, Appellant D.B. was found guilty of "patient neglect," "non physical patient abuse," and "exploitation." Her three day suspension was upheld. After finding her guilty of such serious charges, the Pennsylvania State Civil Serive Commission transferred the Appellant to another state agency and she was later promoted to the position of RN Nurse Educator.

52) In a different SCSC Adjudication on Appeal # 29007, entered on March 7, 2017, Appellant J.R.A. Sr. was found guilty of "negligent patient abuse." His one day suspension was upheld.

53) In an email from the Plaintiff to Deputy Attorney General Michael E. Kennedy, counsel for the defendants, on September 10, 2017 the Plaintiff made an offer to enter a settlement agreement with General Carrelli and the Pennsylvania Department of Military and Veteran's Affairs. This offer was ignored. **Exh. P-27**

54) In a separate email from the Plaintiff to Deputy Attorney General Michael E. Kennedy, counsel for the defendants, on September 10, 2017, the Plaintiff made an offer to enter a settlement agreement with the Pennsylvania State Civil Service Commission and Commissioners. This offer was ignored. **Exh. P-28**

55) In an email exchange that occurred on August 18, 2016, DMVA Attorney Stephen J. Bushinski was <u>not</u> agreeable to opening the record to admit new evidence that the "star witness" Barry Blasic had possibly committed perjury in his testimony. **Exh. P-29**

### Certificate of Service

I hereby certify that on the ___3rd___ day of ___November___, 2017, a true and correct copy of the foregoing CONCISE STATEMENT OF FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGEMENT was sent by U.S. First Class Mail to Deputy Attorney General Michael E. Kennedy, counsel for all defendants.

_____
Nancy E. Lewen, pro se, Plaintiff
3342 West 12th Street
Erie, PA 16505