IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NANCY E. LEWEN, ) | |
|        Plaintiff, ) | C.A. No. 17-148 Erie |
| ) | |
| v. ) | |
| ) | District Judge Susan Paradise Baxter |
| PENNSYLVANIA SOLDIERS' AND ) | |
| SAILORS' HOME, et al., ) | |
|        Defendants. ) | |

**MEMORANDUM OPINION**

## I.  INTRODUCTION

### A.  Relevant Procedural History

Plaintiff Nancy E. Lewen, initiated this civil rights action on June 7, 2017, by the filing of a *pro se* complaint pursuant to 42 U.S.C. § 1983. Plaintiff subsequently filed an amended complaint [ECF No. 25] and a second amended complaint [ECF No. 31], the latter of which is the operative pleading in this case. Named as Defendants are: Pennsylvania Soldiers' and Sailors' Home ("PSSH"); Commandant Barbara Raymond ("Raymond"); Pennsylvania Department of Military and Veterans' Affairs ("DMVA"); Brigadier General Anthony Carrelli, Adjutant General ("Carrelli"); Pennsylvania State Civil Service Commission ("CSC"); Chairman Bryan R. Lentz ("Lentz"); Commissioner Odelfa Smith Preston ("Preston"); Commissioner Gregory M. Lane ("Lane"); Pennsylvania Department of Labor and Industry, Unemployment Compensation Board or Review ("UCBR"); Kathy Manderino, Secretary of the Pennsylvania Department of Labor and Industry ("Manderino"); Pennsylvania Bureau of Professional and Occupational Affairs ("BPOA"); Suzanne Hendricks ("Hendricks"); Linda A. Kerns, Committee

1

Member ("Kerns"); Sherri Luchs, Committee Member ("Luchs"); Pennsylvania Department of State/Office of Hearing Examiners ("POHE"); and Christopher K. McNally, Hearing Examiner ("McNally"). All individual Defendants are named in both their individual and official capacities.[1] For ease of reference, Defendants PSSH, DMVA, CSC, UCBR, BPOA, and POHE, will be collectively referred to as "State Agency Defendants."

The claims in this case stem from the termination of Plaintiff's employment with PASSH and DMVA on March 2, 2016, based upon allegations of "workplace violence." (ECF No. 31, Second Amended Complaint, at ¶ 5). The complaint contains a total of nine claims: (1) denial of First Amendment freedom of speech against all Defendants; (2) denial of Fourteenth Amendment due process and equal protection against all Defendants; (3) retaliation against all Defendants; (4) whistleblower retaliation in violation of the Pennsylvania Whistleblower Law, 43 Pa.C.S. §§ 1421-1428, against all Defendants; (5) defamation of character, libel, and slander under Pennsylvania state law against all Defendants; (6) "infliction of mental anguish and humiliation" under Pennsylvania state law against all Defendants; (7) wrongful termination against Defendants PSSH, Raymond, DMVA, Carrelli, CSC, Lentz, Preston, and Lane; (8) "meritless denial of unemployment compensation" against Defendants PSSH, Raymond, DMVA, Carrelli, UCBR, and Manderino; and (9) disability discrimination and failure to accommodate a disability against all Defendants. (Id. at ¶¶ 44-52).

Pending before the Court is Defendants' motion to dismiss [ECF No. 60], arguing, *inter alia*: (1) Plaintiff's Section 1983 claims against the State Agency Defendants, as well as her official capacity claims against the individual Defendants, are barred by Eleventh Amendment

---

[1] In addition, Plaintiff names "Unknown Board Members," who have not since been identified or served in this case and are, thus, not a party to Defendants' motion.

2

immunity; (2) Plaintiff's Section 1983 claims against the individual Defendants in their individual capacities fail to state causes of action upon which relief may be granted; (3) Plaintiff's state law claims against all Defendants are barred by Pennsylvania sovereign immunity; (4) Plaintiff's claims against the CSC, OCBR, POHE, BPOA and all of their individual members are barred by quasi-judicial immunity; and (5) Plaintiff's claim under Pennsylvania's whistleblower law is untimely.   Plaintiff has filed a brief in opposition [ECF No. 63] and a supplemental memorandum in opposition [ECF No. 64] to Defendants' motion. This matter is now ripe for adjudication.

### B.     Relevant Factual History

At all times relevant to this action, Plaintiff was employed by the DMVA as a Licensed Practical Nurse at the PSSH. (ECF No. 31, at ¶ 3). In or around November 2015, Plaintiff was accused by unnamed "Defendants" of "neglect of duty." (Id. at ¶ 17). Plaintiff countered the accusations with an allegation of "facility contributory negligence," and then filed an anonymous complaint with the Department of Health in December 2015, which resulted in four deficiencies being assessed against PSSH. Plaintiff also filed a separate anonymous complaint of elder abuse and neglect with the Pennsylvania Attorney General's Office. (Id. at ¶ 18).

Plaintiff later confided to a coworker in off-duty Facebook messages that she was the one who filed the anonymous complaints of elder abuse, and that she had workplace safety concerns following an incident of workplace violence against her by a supervisor. (Id. at ¶¶ 19-20). Plaintiff also "jokingly 'threatened' the same coworker with homemade chicken noodle soup and Vick's Vapo Rub when the coworker was sick with a bad head cold." (Id. at ¶ 22). Plaintiff then mailed a letter "warning the coworker's ex-wife that his online dating profile revealed too much personal information and was jeopardizing the safety of herself and her daughter." (Id. at ¶ 23).

3

The coworker gave Plaintiff's off-duty Facebook messages to another coworker, who shared the messages with Defendant Raymond, who "immediately terminated" Plaintiff on the grounds of "workplace violence." (Id. at ¶¶ 25-26). At Plaintiff's subsequent unemployment compensation hearing, Defendant Raymond testified that she did not know at the time of the termination that Plaintiff was responsible for the anonymous elder abuse complaints, and insisted that the termination was based on "Plaintiff threatening the coworker with the chicken noodle soup and Vicks Vapo Rub [on Facebook], writing the letter to the coworker's estranged wife, and voicing workplace safety concerns [on Facebook]." (Id. at ¶ 31).

### C.    Standard of Review

Defendants' motion to dismiss is predicated on Rule 12(b)(6) of the Federal Rules of Civil Procedure. "When considering a Rule 12(b)(6) motion, we accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n, 894 F.3d 509, 526–27 (3d Cir. 2018) (internal quotation marks and citations omitted). In order to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., citing Twombly, 550 U.S. at 556. In conducting a Rule 12(b)(6) analysis, the Court may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are

based upon [those] documents." Wayne Land, 894 F.3d 509, 526–27 (3d Cir. 2018) (internal quotation marks and citations omitted) (alteration in the original).

## II.   DISCUSSION

### A.   Eleventh Amendment Immunity

Defendants contend that Plaintiff's Section 1983 claims against the State Agency Defendants must be dismissed because they are entitled to immunity under the eleventh amendment to the United States Constitution. The Court agrees.

The Eleventh Amendment proscribes actions in the federal courts against, *inter alia*, states and their agencies. Laskaris v. Thornburgh, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania); Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274 (1977) (state agencies). "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it... a State cannot be sued directly in its own name regardless of the relief sought." Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985), citing Alabama v. Pugh, 438 U.S. 781 (1978).

It is beyond dispute that all of the State Agency Defendants are, in fact, arms of the state, or state agencies, protected by Eleventh Amendment immunity. See, e.g., Helfrich v. Com. of Pa., Dept. of Military Affairs, 660 F.2d 88, 89 (3d Cir. 1981) (Department of Military Affairs and the Pennsylvania Soldiers' and Sailors' Home); Felder v. Delaware County Office of Services for the Aging, 2009 WL 2275814, at *4 (E.D. Pa. Jul. 28, 2009) (Pennsylvania Civil Service Commission); Bullard v. Bureau of Unemployment and Allowances, 516 Fed. Appx. 111, 112 (3d Cir. 2013) (Pennsylvania Unemployment Compensation Board of Review); Shine v. Merenda, 586 Fed. Appx. 95, 97 (3d Cir. 2014) (Pennsylvania Department of State and Pennsylvania Bureau of Professional and Occupational Affairs); and Camas v. Dickson-Witmer, M.D., 2001 WL 34368388, at *8 (D.Del. Mar. 30, 2001) (State Board of Nursing).

Furthermore, no exceptions to Eleventh Amendment immunity are applicable here. The Commonwealth of Pennsylvania has not consented to be sued, Wilson v. Vaughn, 1996 WL 426538 at *1 n.2 (E.D.Pa. July 30, 1996), nor has Congress expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages. Smith v. Luciani, 1998 WL 151803 at *4 (E.D.Pa. March 31, 1998), aff'd, 178 F.3d 1280 (3d Cir. 1999) (Table). Moreover, a state agency is not a "person" against whom a civil rights action may be brought under Section 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Accordingly, Plaintiff's Section 1983 claims against the State Agency Defendants will be dismissed.

In addition, the individual Defendants assert that they, too, are immune from suit under the Eleventh Amendment, to the extent Plaintiff is suing them in their official capacities. The Court agrees. It is well settled that suits for damages by individuals against, *inter alia*, state officers acting in their official capacities are barred by the Eleventh Amendment. See Kentucky, 473 U.S. at 165-67 (holding that claims for damages against a state officer acting in his official capacity are barred by the Eleventh Amendment). Additionally, while Eleventh Amendment immunity generally does not bar official capacity claims to the extent they seek prospective injunctive relief, see Laskaris, 661 F.2d at 26 citing Ex parte Young, 209 U.S. 123 (1908), the equitable relief sought here lacks the specificity necessary to state a cognizable basis for granting an injunction.[2] As a result, Plaintiff's official capacity claims against the individual Defendants will be dismissed, in their entirety.

---

[2] In particular, Plaintiff asks for "Appropriate equitable relief against all Defendants including the enjoining and permanent restraining of these violations, and direction to Defendants to take such affirmative action as is necessary to ensure that the effects of the unconstitutional and unlawful employment practices are eliminated and do not continue to affect Plaintiff's, or others' employment opportunities." (ECF No. 31, at ¶ 54B).

**B.     Pennsylvania Sovereign Immunity**

Defendants move to dismiss Plaintiff's state law claims[3] based upon Pennsylvania's doctrine of sovereign immunity.

In Pennsylvania, state law claims against the Commonwealth, its officials, and its employees acting within the scope of their duties, are barred by sovereign immunity, subject to several enumerated exceptions.[4]  See 42 Pa.C.S. §§ 8521-8522; Story v. Mechling, 412 F.Supp.2d 509, 518 (W.D.Pa. 2006) aff'd 214 Fed. Appx. 161 (3d Cir. 2007). Under Pennsylvania law, "[t]hese exceptions must be strictly construed and narrowly tailored." Brown v. Blaine, 833 A.2d 1166, 1173 (Pa.Cmwlth. 2003). None of the enumerated exceptions are applicable here.

Since it has already been established that the State Agency Defendants are all arms of the state, they are entitled to the same sovereign immunity granted to the Commonwealth. In addition, the allegations of the complaint make clear that all of the alleged actions of the individual Defendants were carried out within the scope of their respective duties as state employees. Thus, the individual Defendants are also entitled to the same sovereign immunity. Accordingly, Plaintiff's state law claims against all Defendants will be dismissed.

---

[3] Defendants list Plaintiff's state law claims as defamation of character, libel, and slander (Claim Five); infliction of mental anguish and humiliation (Claim Six); wrongful termination (Claim Seven); meritless denial of unemployment compensation (Claim Eight); and disability discrimination and failure to accommodate a disability (Claim Nine). While there is no dispute that Claims Five through Eight are purely state law claims, it is unclear whether Plaintiff intends to allege Claim Nine under state or federal law. To the extent Claim Nine is intended to be a state law claim, it will be addressed here; however, to the extent it is intended to allege a federal claim under the Americans with Disabilities Act ("ADA"), such claim will be addressed separately hereafter.

[4] 42 Pa.C.S. § 8522(b) provides the following list of exceptions to the sovereign immunity covering Pennsylvania state actors: (1) vehicle liability; (2) medical/professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, and control of animals; (7) liquor store sales; (8) national guard services; and (9) toxoids and vaccines.

### C.      Quasi-Judicial Immunity

Defendants argue that Plaintiff's Section 1983 claims against the CSC, the UCBR, the POHE, the BPOA, and all of their individual members are barred by quasi-judicial immunity. Since the Court has already determined that all State Agency Defendants will be dismissed on other immunity grounds, this argument will be addressed solely with regard to the individual members of the CSC, UCBR, POHE, and BPOA named as Defendants in this case. The CSC members consist of Defendants Lentz, Preston, and Lane; the only UCBR member is Defendant Manderino;[5] the only POHE member is Defendant McNally; and the members of BPOA's Board of Nursing are Defendants Hendricks, Kerns, and Luchs.

Quasi-judicial immunity attaches to public officials whose roles are "'functionally comparable' to that of a judge." Hamilton v. Leavy, 322 F.3d 776, 785 (3d Cir.2003), quoting Butz v. Economou, 438 U.S. 478, 513 (1978). Such immunity "flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official." Cleavinger v. Saxner, 474 U.S. 193, 201 (1985) (citation and internal quotation marks omitted). "Thus, in evaluating whether quasi-judicial immunity grants immunity to a particular official, a court inquires into 'the official's job function, as opposed to the particular act of which the plaintiff complains.'" Keystone Redevelopment Partners, LLC v. Decker, 631 F.3d 89, 95 (3d Cir. 2011), quoting Dotzel v. Ashbridge, 438 F.3d 320, 325 (3d Cir. 2006); See also Gallas v. Supreme Court of Pa., 211 F.3d 760, 769 (3d Cir.2000) ("[O]ur analysis must focus on the general nature of the challenged action, without inquiry into such 'specifics' as the [official's] motive or the correctness of his or her decision," citing Mireles v. Waco, 502 U.S. 9, 13 (1991).

---

[5] Defendant Manderino is actually identified as the Secretary of the Pennsylvania Department of Labor and Industry, of which the UCBR is a branch; however, Defendants have broadly included her as a member of the UCBR for purposes of their argument.

Quasi-judicial immunity is an absolute bar to monetary liability for defendants who perform judicial functions and are sued in their personal capacities, even if the defendant acted with malice or in bad faith, unless (1) the conduct at issue was not a "judicial act," or (2) the conduct was taken in complete absence of jurisdiction. Mireles, 502 U.S. at 11. These two exceptions are quite narrow in scope and are not frequently invoked to deny judicial or quasi-judicial officers such immunity. See Stump v. Sparkman, 435 U.S. 349, 362 (1978) (describing the limited nature of the two exceptions to judicial immunity). Since there is no indication that either of the above exceptions apply in the instant case and because Plaintiff does not contend to the contrary, the Court will only address whether the individual Defendants should be afforded the protections of quasi-judicial immunity in the first place.

Here, Plaintiff has failed to allege any specific allegations against Defendants Lentz, Preston, and Lane, apart from identifying their roles as members of the CSC. Thus, their actions are deemed to be consonant with the actions of the CSC, which is alleged to have "denied the Plaintiff's right to due process of law and freedom of speech when they did not permit the Plaintiff to testify at her appeal hearing," which she lost. (ECF No. 31, at ¶ 34). Plaintiff alleges further that the CSC denied her request for reconsideration and reversal of its decision. (Id.). These allegations indicate that Plaintiff's claims against Defendants Lentz, Preston, and Lane arise from the performance of duties that were "functionally comparable" to those of a judge. Accord Chambers v. Upper Darby Tp. Civil Serv. Comm., 1995 WL 631673, at *3 (E.D.Pa. Oct. 26, 1995) ("Members of a Civil Service Commission are protected from damages by quasi-judicial immunity). As a result, such claims are barred by quasi-judicial immunity, and Defendants Lentz, Preston, and Lane will be dismissed from this case.

Similarly, Plaintiff's sole allegation against Defendant McNally is that, as Hearing Examiner, he "violated the Plaintiff's right to Due Process of Law, Equal Protection of the Law and Freedom of Speech by refusing to acknowledge the Plaintiff's pleadings and allegations of whistleblower retaliation, but admitting the findings from the Unemployment Compensation Appeal and the Pennsylvania State Civil Service Commission Appeal." (ECF No. 31, at ¶ 39). This allegation implicates actions that were taken by Defendant McNally in the performance of his duties that were "functionally comparable" to a judge, and, thus, Plaintiff's claims against Defendant McNally are barred by quasi-judicial immunity and will be dismissed. Accord Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986) (concluding that hearing examiner was entitled to quasi-judicial immunity). Since these are the only claims asserted against Defendant McNally, he will be terminated from this case.[6]

A similar finding is warranted as to Plaintiff's claim against Defendants Hendricks, Kerns, and Luchs arising from their suspension of her nursing license and their failure to reinstate the same within 180 days. (ECF No. 31, at ¶¶ 38, 40). See, e.g. Duncan v. Mississippi Bd. of Nursing, 982 F.Supp. 425, 433-34 (S.D.Miss. 1997) (affording members of state board of nursing absolute quasi-judicial immunity from a Section 1983 claim for their imposition of disciplinary sanctions against the plaintiff). Thus, Plaintiff's claims against Defendants Hendricks, Kerns, and Luchs arising from their suspension of Plaintiff's nursing license are barred by quasi-judicial immunity and will be dismissed.

Finally, as to Defendant Manderino, Plaintiff alleges that said Defendant violated her due process rights "by denying [her] written request for names of the [UCBR] board members who

---

[6] Defendant McNally is the only Defendant in this case against whom Plaintiff asserts an allegation pertaining to a purported Fourteenth Amendment Equal Protection claim. Since it has been determined that any such claim against Defendant McNally is barred by quasi-judicial immunity, Plaintiff's equal protection claim will be dismissed.

10

had made the decision [to deny unemployment compensation] and for denying [her] written request for the legal citation that was used by the board members." (ECF No. 31, at ¶ 37). These allegations implicate actions that are more administrative than judicial in nature and, thus, do not raise the bar of quasi-judicial immunity. Defendants' motion to dismiss Plaintiff's claims against Defendant Manderino based on the grounds of immunity will be denied, accordingly.

### D.     Pennsylvania Whistleblower Law

Plaintiff alleges that the termination of her employment was in retaliation for her reports of elder abuse in violation of Pennsylvania's Whistleblower Law, 43 Pa.C.S. § 1421, *et seq.* Defendants argue that this claim must be dismissed as untimely. The Court agrees.

The Whistleblower Law cited by Plaintiff provides that "[a] person who alleges a violation of this act may bring a civil action ... within 180 days after the occurrence of the alleged violation." 43 Pa.S. § 1424(a). "Despite the use of the permissive 'may,' the Whistleblower Law's '180–day time limit is mandatory, and courts have no discretion to extend it.' Campion v. Northeast Utilities, 598 F.Supp.2d 638, 645 (M.D.Pa. Feb. 24, 2009), citing O'Rourke v. Pa. Dep't of Corr., 730 A.2d 1039, 1042 (Pa.Commw.Ct.1999) citing Perry v. Tioga County, 649 A.2d 186, 188 (Pa.Cmwlth 1994), appeal denied, 540 Pa. 609, 655 A.2d 995 (1995).

Here, Plaintiff's termination occurred on March 2, 2016; however, this action was not commenced until June 8, 2017, well beyond the 180-day statutory time period allowed. Thus, Plaintiff's retaliation claim under Pennsylvania's Whistleblower Law will be dismissed. Since this is the only other claim specifically asserted against Defendants Hendricks, Kerns, and Luchs, these Defendants will be terminated from this case.

### E.     Defendant Carrelli

Aside from identifying Defendant Carrelli in the caption as Adjutant General of the

DMVA, Plaintiff's only allegation specifically pertaining to him is that he "approved" the "PSSH Plan of Correction, written by Defendant Barbara Raymond … to discipline nurses without actually investigating and addressing root causes." (ECF No. 31, at ¶ 17). However, the primary purpose of this allegation is to provide background for the events that led Plaintiff to file her anonymous complaint of elder abuse with the Attorney General. As such, the allegation has very little, if anything, to do with the crux of the claims in this case, and fails to provide a cognizable basis for any claim against Defendant Carrelli.

Moreover, to the extent Plaintiff is attempting to assert a claim against Defendant Carrelli in his supervisory capacity, such claim also fails because it is well-settled that section 1983 liability cannot be predicated solely on the basis of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1972). Defendant Carrelli will be dismissed from this case, accordingly.

### F.     First Amendment Claims

#### 1.     Freedom of Speech

Plaintiff claims that the termination of her employment was a violation of her First Amendment right to freedom of speech because the termination occurred as a result of off-duty Facebook messages she sent to another co-worker regarding, *inter alia*, workplace safety concerns and allegations of elder abuse at PSSH. Although this claim is asserted against all Defendants, the only remaining Defendant[7] against whom such a claim is specifically alleged is Defendant Raymond. (ECF No. 31, at ¶ 25). Defendants seek to dismiss this claim, arguing that "the Second Amended Complaint does not offer factually [sic] support for such a cause of action, even against Raymond," and that "Plaintiff has not established that her protected activity caused her dismissal." The Court disagrees.

---

[7] At this point, based on the foregoing discussion, the only remaining Defendants are Defendants Raymond and Manderino, as well as the "unknown board members" of the UCBR who are not a party to the pending motion.

"Where a public employee speaks 'as a citizen' about 'matters of public concern' and is disciplined in response to that speech, 'the possibility of a First Amendment claim arises.'" Brown v. Tucci, 960 F.Supp.2d 544, 574 (W.D.Pa. 2013), quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). In that situation, the legality of the disciplinary action typically turns on "whether the relevant government entity ha[s] an adequate justification for treating the employee differently from any other member of the general public," whether the employee's speech "has some potential to affect the entity's operations," and whether the restrictions on speech imposed by the entity are necessary to its efficient and effective operation. Garcetti, at 418–419. Consideration must also be given to whether the speech "impairs discipline by superiors or harmony among co-workers," "has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary," "impedes the performance of the speaker's duties," or "interferes with the regular operation of the enterprise." Rankin, 483 U.S. at 388.

The threshold question in applying this balancing test is whether the plaintiff's speech may be "fairly characterized as constituting speech on a matter of public concern." Id., at 384, citing Connick v. Myers, 461 U.S. 138, 146 (1983). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48.

Here, Plaintiff alleges that in off duty Facebook messages to a co-worker, she "confided … that she had … filed… anonymous complaints of elder abuse" with the Pennsylvania Office of the Attorney General, and had "voiced workplace safety concerns … following an incident of workplace violence against [her] by a supervisor." (ECF No. 31, at ¶¶ 18-20). Concerns of elder abuse and workplace safety are plainly matters of public concern, which Plaintiff expressed as a citizen, not as a public employee. Thus, Plaintiff's allegations are sufficient to "raise the

possibility of a First Amendment claim." Moreover, Plaintiff has alleged that Defendant Raymond's receipt and review of her Facebook messages immediately led to her termination. (ECF No. 31, at ¶ 25). The only question remaining is whether Defendant Raymond was justified in terminating Plaintiff in response to her speech under the criteria propounded by the Supreme Court in Garcetti and Rankin. This question remains unresolved at this stage, since neither party has adequately addressed the criteria. Nonetheless, the Court finds that Plaintiff has sufficiently alleged a First Amendment freedom of speech claim against Defendant Raymond to survive Defendants' motion to dismiss.

### **2.    Retaliation**

Similarly, the Court finds that Plaintiff has sufficiently alleged a claim of retaliation under Section 1983 against Defendant Raymond.

"In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Tp., 463 F.3d 285, 295 (3dCir. 2006), citing Mitchell v. Horn, 318 F.3d 523, 530 (3dCi. 2003). Here, it is beyond dispute that Plaintiff's Facebook messages were constitutionally protected conduct and that her termination of employment would qualify as retaliatory action sufficient to deter a person of ordinary firmness from exercising her constitutional rights. Furthermore, Plaintiff specifically alleges that Defendant Raymond immediately terminated her employment after reviewing Plaintiff's Facebook messages, thus establishing the causal connection necessary to complete a *prima facie* case of retaliation. Defendants' motion to dismiss Plaintiff's retaliation

claim against Defendant Raymond, only, will be denied, but will be granted as to all other remaining Defendants against whom such claim ostensibly is asserted.

### G. Fourteenth Amendment Due Process

To establish a due process claim under the Fourteenth Amendment, Plaintiff must demonstrate (1) the existence of a constitutionally protected liberty or property interest; and (2) constitutionally deficient procedures by the state in its deprivation of that interest. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 571(1972).

Here, Plaintiff alleges that Defendant Manderino "violated [her] right to due process of law by denying [her] written request for the names of the [UCBR] board members who had made the decision [to deny unemployment compensation] and for denying [her] written request for the legal citation that was used by the board members." (ECF No. 31, at ¶ 37). This allegation, by itself, fails to implicate the deprivation of a liberty or property interest upon which a due process violation may be established. As a result, the Court will dismiss Plaintiff's due process claim against Defendant Manderino, and said Defendant will be terminated from this case.

To the extent Plaintiff may be asserting a due process claim against Defendant Raymond arising from the termination of her employment, the Third Circuit has held that "[t]o have a property interest in a job ... a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." Bilski v. Red Clay Consol. School District Bd. of Educ., 574 F.3d 214, 219 (3d Cir. 2009), citing Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005) (citing Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)). As a result, "an at-will employee has 'no property interest' in [his or her] job sufficient to trigger due process concerns." Id., quoting Bishop v. Wood, 426 U.S. 341, 346 n. 8 (1976). In this case, Plaintiff has not established that she was anything more

15

than an at-will employee at the time she was terminated. Thus, she is unable to maintain a due process claim against Defendant Raymond arising from the termination of her employment, and such claim, to the extent alleged, will be dismissed.

### H.     ADA Claim

Plaintiff generally asserts a claim of "disability discrimination and failure to accommodate a disability" (Claim Nine) against all Defendants; however, the only Defendant remaining is Defendant Raymond. To the extent Plaintiff's purported ADA claim is asserted against Defendant Raymond, it fails to state a claim upon which relief may be granted.

Title II of the ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services or activities of a public entity or be subjected to discrimination by such entity." 42 U.S.C. § 12132. The term "public entity," as defined by Title II of the ADA, does not include individuals. 42 U.S.C. § 12131(1). Thus, the law is clear that individuals are not "public entities" under the ADA and are not subject to liability thereunder. Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002) (individuals are not subject to liability under Titles I or II of the ADA). Accordingly, Plaintiff's purported ADA claim against Defendant Raymond, to the extent she is alleging the same, will be dismissed.

### I.     "Unknown Board Member" Defendants

As previously noted, Plaintiff names as Defendants "unknown Board members" of the UCBR who have not since been identified or served in this case.

Section 1915A(b) of the Prison Litigation Reform Act ("PLRA") provides:

> (b) Grounds for dismissal - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

16

28 U.S.C.A. § 1915A(b). Under Section 1915A, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so. Nieves v. Dragovich, 1997 WL 698490, at *8 (E.D. Pa. 1997) ("Under provisions of the Prison Litigation Reform Act codified at 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c), the district courts are required, either on the motion of a party or *sua sponte*, to dismiss any claims made by an inmate that are frivolous or fail to state a claim upon which relief could be granted.").

Here, the only allegations pertaining to the UCBR's "unknown Board members" are subsumed in Plaintiff's allegations against Defendant UCBR; namely, that they "violated Plaintiff's right to due process by failing to provide legal citations for their decision, for admitting hearsay as evidence, for denying the Plaintiff's motion to deny hearsay, and by refusing to remand the matter to the Referee when the Plaintiff submitted new evidence of Perjury by a witness that was mailed to the Plaintiff by an unknown party." (ECF No. 31, at ¶ 36). All of the alleged actions taken by the "unknown Board members" were, thus, performed in a manner "'functionally comparable' to that of a judge." Hamilton, 322 F.3d at 785. Therefore, as with the other individual Defendants who acted as members of the State Agency Defendants in this case, the UCBR's "unknown Board members" are entitled to quasi-judicial immunity, which bars Plaintiff's due process claim against them. As a result, such claim will be dismissed as frivolous, *sua sponte*, pursuant to the authority granted by the PLRA, and the "unknown Board members" will be terminated from this case.

An appropriate Order follows.