THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NANCY E. LEWEN, | : |
| | : Civil Action No. 1:17-cv-148-SPB |
| Plaintiff, | : |
| | : |
| v. | : |
| | : Magistrate Judge Susan Paradise |
| BARBARA RAYMOND, | : Baxter |
| | : |
| Defendant. | : |

**MEMORANDUM FOR TELEPHONIC CONFERENCE ON DECEMBER 5, 2019
CONCERNING MOTION TO COMPEL FILED ON NOVEMBER 1, 2019**

At the telephonic conference on December 5, 2019 at 10:00 am, Plaintiff Nancy Lewen, pro se, plans to discuss the following nine (9) interrogatories, including two previously answered interrogatories, with the Court and Yana Warshafsky Esq., counsel for Defendant Raymond. If granted, this would be a total of thirty two (32) interrogatories.

The purpose of this request, as to all of the Interrogatories, is to establish MOTIVE(S) as to why Defendant Raymond went to such great lengths to swiftly eliminate the Plaintiff from the workplace. The Plaintiff contends that Defendant Raymond, possibly in collusion with "HR" and other DMVA employees, concocted elaborately fabricated reasons, trumped up "policy and procedure violations," to terminate the Plaintiff because she had voiced the following very serious concerns in the time period immediately preceding the employment termination:

1

1) Concerns about facility non compliance with state and federal regulations in the areas of direct care staffing, medication administration timeliness, dignity issues and resident rights.

2) Concerns about facility contributory neglect regarding insufficient staffing issues that resulted in reduced quality of care and actual harm to a patient in August 2015.

3) Concerns that administrative bullying and workplace violence by a supervisor could hypothetically lead to an act of workplace gun violence.

4) Concerns and an alleged report to the PA Attorney General about several resident/resident sexual assaults amongst cognitively impaired residents, including an act of involuntary deviate sexual intercourse.

The Plaintiff is requesting any exculpatory evidence in Defendant Raymond's possession that would prove that she responded to the Plaintiff's very serious concerns in any way other than by swiftly eliminating the Plaintiff from the workplace in March 2016 via employment termination.

**A.     FROM FIRST SET OF INTERROGATORIES:**

<u>Previously answered Interrogatories 17 and 18.</u> Plaintiff requests more complete answers and any exculpatory evidence to show that Defendant Raymond responded in any way other than employment termination to the Plaintiff's concerns of patient neglect, insufficient staffing and workplace violence in the form of administrative bullying.

17. Following the poor facility inspection by the Pennsylvania Department of Health on November 6, 2015, and the Plaintiff's allegation of "Facility Contributory Neglect," indicate all steps you took to eliminate, reduce, draw attention to or otherwise address elder abuse, neglect and/or any other quality of care issues related to nurse staffing levels which might have contributed to patients receiving less than appropriate care.
**ANSWER: OBJECTION. This Interrogatory is objected to as it is irrelevant and not proportional to the needs of this lawsuit. Without waiver, as Commandant, I ensure that the practice of PSSH is to uphold and maintain compliance with Federal and State regulations, and to make corrections to any known unsatisfactory practices.**

18. Following the Plaintiff's allegations that administrative bullying by a supervisor could lead to workplace violence at the Pennsylvania Soldiers and Sailors Home, indicate all steps you took to eliminate, reduce, draw attention to or otherwise address administrative bullying, whether real or perceived.
**ANSWER: OBJECTION. This Interrogatory is objected to as it is irrelevant and not proportional to the needs of this lawsuit. Without waiver, see response to Interrogatory 17.**

## B. FROM SECOND SET OF INTERROGATORIES:

Interrogatories 17, 18, 19, 20.  These Interrogatories pertain to Interrogatory 12 and the attached Exhibit.  Plaintiff requests any exculpatory evidence to show that Defendant Raymond responded in any way other than employment termination to the Plaintiff's concerns and allegations about facility non compliance with state and federal regulations in the areas of direct care staffing, medication administration timeliness, dignity issues and resident rights.

> 12. (On February 22, 2016, the Plaintiff submitted an unsigned Commonwealth Witness Statement to her immediate supervisor, Raymond Hamm, RN, voicing various concerns. and ended by giving Administration ten (10) business days to respond or she would report her concerns to the Equal Employment Opportunity Commission (EEOC.) Seven (7) business days later, the Plaintiff was terminated from employment by the Defendant on March 2, 2016.   This witness statement was later submitted as evidence by DMVA attorney Stephen J. Bushinski Esq. at the Plaintiff's civil service and unemployment compensation hearings, along with a verbatim letter which she had written, but not mailed, to the EEOC which DMVA had retrieved from the Plaintiff's work computer account.   In the letter, among other things, the Plaintiff voiced concerns over regulatory compliance issues in the areas of staffing and medication administration on all of the nursing units, but specifically on the assisted living unit "C" on the night shift and morning medication pass on February 18/19, 2016.  ~~Identify how many Licensed Practical Nurses and Registered Nurses were on duty on that night shift of February 18/19, 2016.~~

3

17.     In the above referenced letter and witness statement, the Plaintiff expressed her concern that veteren assisted living residents were being told by the regularly assigned charge nurse to come to the nursing station beginning at 3:00 am to receive their morning medications to ensure that the charge nurse could complete her duties in time to help serve breakfast in the Unit A and Unit B skilled nursing dining room.

Identify how you responded to the Plaintiff regarding her above mentioned concerns for regulatory compliance.  Include the date or dates of communication, the method of communication, and a summary of the communication.  If there are any documents, either email, letter, note, memo or otherwise relating  to the communication, please produce a copy.

18.     In the above referenced letter and witness statement, the Plaintiff expressed her concern that Unit C was not in compliance with Pennsylvania law regarding Direct Care Staffing.

Identify how you responded to the Plaintiff regarding her above mentioned concerns for regulatory compliance regarding direct care staffing.  Include the date or dates of communication, the method of communication, and a summary of the communication.  If there are any documents, either email, letter, note, memo or otherwise relating  to the communication, please produce a copy.

19.     In the above referenced letter and witness statement, the Plaintiff expressed her concern that nurses throughout the facility were not in compliance with the applicable long term care regulations regarding their medication administration.  Specifically, the Plaintiff alleged:

> 1) all of the other nightshift nurses who work Unit C begin the med pass early.
> 2) Nightshift nurses non Units A and B begin passing their 0600 medications at 0430 when they are the only nurse scheduled.
> 3) Dayshift nurses on all units routinely begin passing their 0900 medications at 0700.  Nurses on Units A and B supposedly are often not finished passing their 0900 medications until noon.
> 4) Evening shift nurses on Units A, B, and C are often still passing their 2100 medications at 2300.
> 5)  Recently, when the "condensed schedule" nurses leave at 1945, (Barry Blasic LPM, hereinafter referred to as "Barry," and Dawn Zappas LPN, hereinafter referred to as "Dawn,") they have already passed out much of the 2100 medications, a med pass which should not even be started until 2000.

Identify how you responded to the Plaintiff regarding her above mentioned concerns for regulatory compliance regarding medication administration timeliness.  Include the date or dates of communication, the method of communication, and a summary of the communication.  If there are any documents, either email, letter, note, memo or otherwise relating  to the communication, please produce a copy.

4

20.     In the above referenced letter and witness statement on February 22, 2016, the Plaintiff alleged that residents on Unit C were forbidden from asking for a peanut butter and jelly sandwich after 9:00 pm, and were forbidden from using a urinal if requested.

Identify how you responded to the Plaintiff regarding her above mentioned concerns for regulatory compliance in the areas of resident rights and dignity issues.  Include the date or dates of communication, the method of communication, and a summary of the communication.  If there are any documents, either email, letter, note, memo or otherwise relating to the communication, please produce a copy.

## C. FROM THIRD SET OF INTERROGATORIES:

<u>Interrogatories 1,3,11.</u>    Plaintiff requests any exculpatory evidence to show that Defendant Raymond responded in any way other than employment termination to the Plaintiff's concerns and alleged report to the PA Attorney General about several resident/resident sexual assaults amongst cognitively impaired residents, including an act of involuntary deviate sexual intercourse.

In the Plaintiff's Unemployment Compensation hearing, you testified that you had terminated the Plaintiff because of content that was contained in some off duty text messages that the Plaintiff had sent to Barry Blasic, LPN.  The following interrogatories relate to the off duty Facebook text messages that you terminated the Plaintiff over.

1.      The Plaintiff alleges that on 1/29/2016, she told Barry Blasic LPN in the off duty text messages that she had responded to Kevin McLaughlin RN, ADON in a group email entitled "Residents rights" that was distributed to all PSSH nursing staff expressing her concern about resident dignity and consent issues as related to sexual activity between the nursing home residents, particularly her concerns about cognitively impaired residents who might not be capable of giving consent.  Specifically, on 1/29/2016, at 8:21 am, the Plaintiff told Barry Blasic via off duty Facebook text message,  "Still, read the essay type response to Kevin work email I wrote entitled "resident rights."  FYI- "Mr. S" only scored an 11 on the BIMS screening tool.  He may not be a consenting adult.  He's more likely a victim of sexual abuse."

Upon reading the off duty Facebook text messages prior to terminating the Plaintiff, what efforts did you make to ensure that no cognitively impaired residents of the Pennsylvania Soldiers and Sailors Home were victims of sexual assault? ~~Include the date or dates of communication, the method of communication, and a summary of the communication.  If there are any documents, either email, letter, note, memo or otherwise that relate to such communication and disciplinary action, please produce a copy.~~

5

3. On or about 2/2/2016, the Plaintiff provided a copy of the nurse's notes involving the above referenced sexual assault to the Pennsylvania Office of the Attorney General Bureau of Criminal Investigation. (On 2/4/2016 at 7:52 am, the Plaintiff told Barry Blasic via the off duty Facebook text messages that her elder abuse report had been delivered to the OAG's office in Harrisburg that morning.")

~~Please identify who was the administrator in charge when the above referenced care dependant cognitively impaired resident on Unit D, "Mr. J.L." was the victim of an act of involuntary deviate sexual intercourse (oral sex) by another cognitively impaired resident.~~

Identify what outside regulatory or law enforcement agency you reported this act of involuntary deviate sexual intercourse to for investigation as required to under Pa 55 Code § 2600.16. Reportable incidents and conditions. Include the date or dates of the report, the method of reporting, and a summary of the investigation. ~~If there are any documents relating to this investigation, please redact Mr. J.L.'s and the perpetrator resident's identifying information and produce a copy.~~

11. Following the above referenced act of involuntary deviate sexual intercourse against a cognitively impaired resident on Unit D, a lockdown unit, the cognitively impaired resident perpetrator was moved out of the lock down unit and placed on the skilled nursing Unit B, where he was free to roam amongst all residents on the skilled Units B and A. Some additional cognitively impaired residents were then fondled by the perpetrator. The Plaintiff also provided the names and nurses notes involving those incidents to the Pennsylvania Office of the Attorney General Bureau of Criminal Investigation on or about 2/2/2016.

Identify what outside regulatory or law enforcement agency you reported these sexual assaults to for investigation as required to under Pa 55 Code § 2600.16. Reportable incidents and conditions. Include the date or dates of the report, the method of reporting, and a summary of the investigation. ~~If there are any documents relating to this investigation, please redact these resident's identifying information and produce a copy.~~

Respectfully Submitted this 14th day of November, 2019.

/s/  Nancy E. Lewen, Plaintiff, pro se
150 Chad Brown Street
Providence, RI 02908

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this **MEMORANDUM FOR TELEPHONIC CONFERENCE ON DECEMBER 5, 2019 CONCERNING MOTION TO COMPEL FILED ON NOVEMBER 1, 2019** was served upon the Defendant's attorney by emailing a copy to her electronic address at:

ywarshafsky@attorneygeneral.gov

Yana L. Warshafsky
Deputy Attorney General
Office of Attorney General
1251 Waterfront Place, Mezzanine Level
Pittsburgh, PA  15222
(412) 565-5706

Nancy E. Lewen
150 Chad Brown Street
Providence, RI 02908
814-920-3180

Date: November 14, 2019

7