# DEFENDANT - SMF
# EXHIBIT 20

Nancy E. Lewen, LPN, BA



EEOC – Pittsburgh Area Office
1001 Liberty Avenue
Suite 300
Pittsburgh, PA 15222-4187
Phone: (412) 644-3444

February 22, 2016

Dear Sir or Madam,

My name is Nancy E. Lewen. I wish to file a complaint of gender discrimination by a male supervisor, possibly in collusion with, or as an agent for, a male Assistant Director of Nursing. I have been employed by the Pennsylvania Department of Military and Veteran's Affairs at the Soldiers and Sailors Home in Erie, PA since September 29, 2014. I work on the night shift. My immediate supervisor is Carolyn Williams, RNS, hereinafter referred to as "Carolyn." I frequently also work under Raymond Hamm, RNS, hereinafter referred to as "Ray." My working relationship with my supervisors had been good, but a problem has developed which threatens to disrupt my otherwise peaceful employment at the facility. This letter is regarding the recent behavior of Ray, who for some reason has singled me out to harass me, possibly in collusion with, or acting as agent for, our recently hired Assistant Director of Nurses, Kevin McLaughlin RN, hereinafter referred to as "Kevin." Ray's behavior did in fact escalate to the point of verbal bullying on the morning of Saturday February 20, 2016. I will begin my complaint with the details from that incident.

Statement of Facts:

On the morning of Friday February 19, 2016, I was working on Unit C, the Assisted Living Unit, completing my assignment exactly the way that I was trained during orientation to the unit by Christine Wills, LPN, hereinafter referred to as, "Chris." At 0500, Ray came to the unit to collect the paperwork, as witnessed by Julie Richards, CNA, hereinafter referred to as "Julie." Ray looked around the unit for a few minutes, as if searching for something to find fault with, and with a look of disdain on his face, witnessed by Julie, he pointed to my worksheets on the med carts and asked, "are these crossed off names the residents who you have already given medicine to?" I cheerfully replied, "yes," and treated Ray respectfully and professionally at all times, as witnessed by Julie.

The worksheet that I was using was the preprinted typewritten 11-7 worksheet that is provided by Chris for the other nurses to use, but is not an official DMVA or PSSH form. The eleven residents who had already come for their medicines had come of their own volition. I had not sent Julie to wake anybody up, and had not woke anybody up myself. I was merely filling in, playing the role of Chris on her night off. Ray gave me a dirty look, as witnessed by Julie, and abruptly left the unit. I thought nothing more of the conversation until the next night when Ray phoned me. In an unwitnessed telephone conversation, he claimed that he had not wanted to counsel me in front of Julie, but I was "way far out of compliance" with my medication administration. He read the policy to me, and sternly stated that according to policy, the window to give medications is "one hour earlier until one hour after the ordered administration time." He then raised his voice and threatened to "PDC" (disciplinary counsel) me if he caught me out of compliance with medication administration ever again.

I calmly told Ray that I realized that I was technically out of compliance, but I was performing the medication administration in the exact way that I had been orientated by Chris, and the same exact way that all of the other nurses do the night shift med pass on Unit C. I furthermore stated in my defense that being out of compliance with medication administration is a common occurrence at PSSH on all shifts and all units, and that it was unfair for him to single me out and point a finger at me.

Ray then made an audible unwitnessed "ha" snort type sound in a sarcastic laughing type manner. He then did say in a threatening voice that he was going to talk to the other nurses to see if what I was saying was true. He rudely and unprofessionally hung the phone up without even saying goodbye to me. I have no witnesses to this bullying type telephone conversation, but I did remain very emotionally upset for the rest of the shift, as witnessed by Penny King, CNA hereinafter referred to as "Penny."

It is unfair for Ray to single me out for the following reasons, which can be verified by other nurses:

1) All of the other nightshift nurses who work Unit C alone begin the med pass early.

2) Nightshift nurses on Units A and B regularly begin passing their 0600 medications at 0430.

3) Dayshift nurses on all units routinely begin passing their 0900 medications at 0700, and on Units A and B are often not finished passing their 0900 medications until noon.

4) Evening shift nurses on Units A, B and C are often still passing their 2100 medications at 2300.

5) Recently, when the "condensed schedule" nurses leave at 1945, (Barry Blasic LPN, hereinafter referred to as "Barry," and Dawn Zappas LPN, hereinafter referred to as "Dawn,") they have already passed out much of the 2100 medications, a med pass which should not even be started until 2000.

The next night, I worked on Unit E.  John Slupski, LPN, hereinafter referred to as "John," worked on Unit C.  I wondered if Ray's rules for me would also apply to John, in spite of the fact that John is also a male nurse like Ray and Kevin.  My own female supervisor, Carolyn, was on duty that night. I asked Carolyn if Ray had left her a note to make sure that John was in compliance with the medication administration policy.  Carolyn claimed that she had not been left a note by Ray, and stated that she had no idea what I was talking about until I relayed to her the events from the previous nights.  She did agree with Ray that we should be in compliance with our medication administration, but the way that she said it to me was very professional, and involved absolutely no hint of bullying or harassment.

The encounters I have had with Ray have mostly centered on my behavior while working as the charge nurse on Unit C.  Ray places more importance on the enforcement of "snack time rules" on Unit C than he does to abiding by Pennsylvania Assisted Living Regulations.  Although we are required by law to assist residents with their activities of daily living, Ray is intent on jeopardizing the continence status and insulting the dignity of grown men by strictly enforcing the unwritten "house rule" of depriving US Veterans in our care from using urinals.

Ray does not care about the the safety of the mostly female 11-7 nursing staff who work on Unit C. God forbid if Ray should catch me violating the parameters and making an assisted living resident a peanut butter and jelly sandwich after 9:00 pm, yet he sees nothing wrong with leaving a female LPN all alone on the unit for 2 ½ hours per night while the CNA takes his/her lawful breaks and helps do rounds on the skilled units.  It is perfectly okay in Ray's opinion to leave the CNA all alone on the unit for 1 hour when the LPN takes his/her lawful breaks.

Many of the Assisted Living residents of the population on Unit C are male veterans who were previously homeless, and many have mental health issues.  There is history of frequent uncareplanned alcohol usage by these residents and history of unforeseen and uncareplanned violent encounters between the residents.  If anything, as a safety measure, staff members from the skilled units should be coming over to Unit C to help out and relieve the Unit C direct care staff during their breaks.  One staff member should never be left alone on the unit for such an extended period of time.

The next part of my complaint references Pennsylvania Assisted Living Regulations § 2800.57. Direct care staffing.

(a) At all times one or more residents are present in the residence, a direct care staff person who is 21 years of age or older shall be present in the residence. The direct care staff person may be the administrator if the administrator provides direct care services.

(b) Direct care staff persons shall be available to provide at least 1 hour per day of assisted living services to each mobile resident.

(c) Direct care staff persons shall be available to provide at least 2 hours per day of assisted living services to each resident who has mobility needs.

(d) At least 75% of the assisted living service hours specified in subsections (b) and (c) shall be available during waking hours.


Ray's belligerence towards me did also escalate a few weeks ago after I asked him a simple question involving the Unit C census and staffing and what I suspected was a math error in figuring the numbers. I'm not accusing Ray or anybody else of intentionally breaking the law. Therefore, I should not have had my intelligence insulted by Ray one night in January when I questioned direct care staffing in relation to the census. I merely pointed out to Ray the possibility of a math error resulting in what appears to be unlawful staffing ratio. The schedulers seem to think that ten staff members per 24 hour period is sufficient. I suspect that the direct care staff paid breaks are possibly inadvertently not being deducted, resulting in an innocent math error by the schedulers. I also suspect that the time is not being deducted for when the 11-7 staff leaves Unit C to help with rounds and in the dining room on the skilled units. I wasn't accusing Ray or anybody else of any intentional regulatory violation.

The example that I gave to Ray during that particular conversation in January was a schedule that had ten direct care staff members during a 24 hour period, and a census of 82.    10 x 7.5 hours/shift = 75 direct care staff hours per day, minus 3 hours on night shift when the staff takes lawful breaks and leaves the unit to help out on the skilled unit = total of 72 direct care staff hours per 24 hour period. Doing the math, 72 hours divided by 82 residents equals .88 direct care hours per resident, NOT the 1 hour per resident as required by Pennsylvania law, (assuming that all residents meet the regulatory definition of "mobile," and only require 1 hour per day of direct care (PA §2800.57 (b,)) and are not entitled to 2 hours per day of direct care. (PA §2800.57 (c.))  I alleged that with a census of 82, we would need 11.5 direct care staff members in a 24 hour period to be in compliance with direct care staffing regulations. Ray acted like he didn't even hear me, and abruptly walked away.

I do not face any such harassment from my actual supervisor, Carolyn. I have been left feeling hurt by Ray's attitude towards me, which has been causing me undue distress without just cause. If left unchecked, I fear this unjust harassment may affect the quality of my work. I've tried speaking openly to Ray on this issue. He denies any bullying or indifferent behavior towards me, and even went so far as to laugh in my face. Finally, I have taken this step to proceed up the chain of command. I wish to

file a formal harassment complaint against Ray, and possibly Kevin, at this time.

In trying to pinpoint a possible cause or motive, I suspect that it may be a male ego driven and completely unnecessary feeling of inadequacy on Ray's part and possibly Kevin. Ray's behavior seems to suspiciously coincide to an email conversation that I had with Kevin. I disagreed with Kevin over the need for a policy on the subject of intimacy guidelines and resident's rights. It seems that ever since I mentioned that to Kevin, Ray has managed to find some fault with me. It is simply not fair that Ray has singled me out to be in compliance with the medication administration policy, when all the other nurses get to violate that policy without being threatened with "PDC."

I am asking for Administration to help me sort out this issue with Ray, so that we may find a way to co-exist on those nights when he is on duty as supervisor. I also ask that in future any counseling or disciplinary type intervention that I receive I would like to receive directly from my own female supervisor, Carolyn, or in the alternative from any other female RN supervisor from any shift, or any female night shift RN in the building, who now possess the ability to discipline LPNs through a recent change in their position description. Being counseled and/or disciplined only by females should eliminate any possibility of future gender discrimination in the disciplinary process.

I have never met the Assisted Living Director, Kim Horvath, hereinafter referred to as "Kim." A few weeks ago, following the dead end conversation with Ray, I did mention my concern about the census math to Nick Swantek LPN, hereinafter referred to as "Nick." I also mentioned to Nick that about ten years ago, while going to school, I was a part time LPN night shift weekend supervisor on the Skilled unit at Grove Manor Nursing Home in Grove City, PA which has 59 residents, so an LPN can legally perform the role of house supervisor. That facility also had an assisted living facility attached to it by double doors, owned by the same church based organization. The administration was very strict that it was two separate entities and two separate funding sources, and we were not to breech the double doors under any circumstances while on duty. The only exception they allowed was if there was a staff party on one side or the other, staff from the other side could go to the other unit on their lunch break only to make themselves a plate of food, and only if they had punched out and were off the clock. These rules were strictly enforced. We were told it would be "fraud" if we were caught helping the other entity.

Nick said that he would mention my concerns to Kim. A few days later, Nick told me that he had supposedly spoken to Kim and that Kim was supposedly not even aware that the 11-7 shift staff were leaving the unit to provide help to the skilled units. I realize that "he said/she said" heresay isn't

always reliable, and Nick may not have ever even spoken to Kim.  Administration should make sure that Kim is aware that Ray, (and Carolyn under Ray's instructions,) pulls her 11-7 shift aide away from the assisted living unit for 1.5 hours most nights to help with the 0100 and 0300 rounds on the skilled units, and that supervisors pull the nurse and aide to leave the assisted living unit a few minutes before 0700 to be in the skilled unit dining room to help serve breakfast.  If Ray tries to deny it, I'm sure it could be proven by security video tapes or if there is an electronic employee badge swipe record from the double doors that lead to Unit B and the skilled unit building.  If such a record exists, it would prove that what I am saying is true.

# DEFENDANT - SMF

# EXHIBIT 21

Nancy E. Lewen



May 23, 2016

EEOC Pittsburgh Area Office
1000 Liberty Avenue,  Room 1112, Federal Building
Pittsburgh, PA 15222

Dear Sir or Madam,

This letter is in support of complaints of discrimination against myself, Nancy E. Lewen. Although I had good job performance and a good attendance record, I was suspended without pay on March 2, 2016, and terminated on March 14, 2016, for what I contend are false allegations of "willful misconduct, bullying, sexual harassment, and workplace violence."  I am a 50 year old female Licensed Practical Nurse with a Bachelor of Arts degree in Sociology.  I have been licensed to practice nursing for 23 years in three states, mostly in long term care facilities, and also in pediatric home health care and the Texas Department of Criminal Justice through staffing agency.  I have never been disciplined by any other employer and have always demonstrated a good work ethic.  I have left every other job on good terms with the employer, after giving two or more weeks written notice of resignation.

At all relevant times herein, I have been a US Citizen and a resident of the Commonwealth of Pennsylvania.  I was hired on September 29, 2014 as a public Pennsylvania Civil Service employee of the Pennsylvania Soldiers and Sailors Home, (PSSH) in Erie, Pennsylvania, which is overseen by a licensed nursing home administrator known as the "Commandant."  Barbara Raymond is the Registered Nurse who has been in the position of Commandant at all relevant times herein.  PSSH is part of the Pennsylvania Department of Military and Veteran Affairs, (DMVA) an agency which does receive Federal funding and employs approximately 22,000 military and civilian personnel.  It is overseen by an official known as the "Adjutant General," a governor appointed cabinet-level position. Brigadier General Anthony Carrelli has performed in the role of Acting Adjutant General for all relevant times herein.  Other parties involved in the investigation leading up to my termination were: Brian Skinner, Human Resource Analyst 2;  Bryan Bender, Human Resource Analyst 3; Kim Kreiser, Human Resource Analyst 5; and Richard Murray, Human Resource Analyst 4.

1

**The wrongful acts that were committed against me can be divided into two time periods:**

1) The suspension and termination period of March 2, 2016 through March 14, 2016, and
2) The post-employment period of March 15, 2016 through present.

I allege that during the time periods of my suspension and termination and post employment period, willful and malicious acts of discrimination were committed against me by Commonwealth of Pennsylvania administrative officials, acting under color of law and outside of the scope of their job duties. Their conduct violated clearly established statutory and constitutional rights of which a reasonable person in their position would have known.

At the time of my termination, I did not rule out the possibility of inadvertent negligence on the part of Barbara Raymond and Anthony Carrelli, but have determined in subsequent weeks and months that their actions were, and continue to be, willful.

Attorney Stephen J. Bushinski is representing PSSH/DMVA.   His contact information is:

> DMVA Office of Chief Counsel
> Bldg 7-36 Fort Indiantown Gap
> Annville, PA 17003-5002
> Phone: 717-861-8503  FAX: 717-861-8265
> email: sbushinski@pa.gov

Attorney Stephen J. Bushinski and Attorney Michael Barrett of the DMVA Office of Chief Counsel are fully aware of the time-line of events and activity leading up to these complaints. They are in possession of all evidence that I am in possession of.   I am submitting some evidence with this complaint, and will willingly provide any further evidence that is requested by EEOC to assist in investigating this complaint.   I have only enclosed excerpts of notes from pre-disciplinary meetings. The complete set of notes can be obtained from the DMVA Office of Chief Counsel.   I have only enclosed excerpts from off duty text messages. The DMVA Office of Chief Counsel presumably has the entire authenticated off duty text messaged conversation that was used as grounds to terminate me.

On March 2, 2016, a state vehicle pulled up to my house and served me with notice of suspension for alleged workplace violation. I was interrogated on March 7, 2016 and March 10, 2016 by interviewers regarding a complaint allegedly filed by my coworker friend, Barry J. Blasic. Among other things, the interviewers also accused me of intimidating my supervisor, Raymond Hamm, and questioned me regarding an anti-workplace discrimination website that I had posted on my personal facebook page. I was terminated on March 14, 2016 on the alleged grounds of violating several workplace violence and inappropriate technology usage polices. Barry Blasic then told me by email that he had not complained about me and that this was "between you and the state, not between you and I." Attorney Stephen J. Bushinski later confirmed that no official written complaint had been filed.

I applied for appeal with the Pennsylvania Civil Service Commission. I also applied for Unemployment Compensation. My appeal hearing before the Pennsylvania Civil Service Commission is on June 13, 2016, at PSSH. PSSH denied my claim for Unemployment Compensation, on the grounds of "Willful Misconduct." My UC appeal hearing is on June 24, 2016. I cannot afford an attorney and am defending myself in these proceedings.

I have made several offers to settle this matter with a simple apology. The only settlement agreement the employer is willing to enter is if I say that I resigned and was not terminated.

Barbara Raymond has insisted that I must be screened with a metal detector wand on the day of the Civil Service appeal hearing on June 13, 2016. She contends that I am a "threat" because I have previously stated that the atmosphere of administrative bullying at PSSH is one that is conducive to an incident of workplace violence if they one day bully the wrong innocent person. Barbara Raymond considers my concern to be a "threat of workplace violence" on my part and feels the need to screen for weapons on the day of my appeal hearing. The Civil Service Commission has agreed to this provision to screen for weapons, so long as the metal detector is purchased by PSSH and so long as all participants are screened for weapons so as not to prejudice me by screening only me for weapons.

**I am filing the following charges:**

**Charge 1) DISCRIMINATION BASED ON RETALIATION** against me for telling a supervisor in writing that I planned to file an EEOC complaint against him for harassment and gender discrimination. In an unsigned creative writing style document, I was actually joking with my former supervisor, who has a sarcastic sense of humor and is known to tell jokes on the job. I was bringing to his attention some very serious actual concerns that I had for several regulatory compliance and staffing issues, including the possibility of facility fraud that I had reason to believe Administrators were attempting to pin on him. PSSH/DMVA officials took this "threat" very seriously.

**Charge 2) DISCRIMINATION BASED ON RETALIATION** against me for when I made a public interest post on my personal off duty Facebook page with the website for "Workplace Fairness," a website about workplace discrimination.

**Charge 3) DISABILITY DISCRIMINATION** against me by PSSH/DMVA officials who bullied and harassed me in spite of their knowledge that I claimed to be a domestic violence overcomer who was diagnosed with "PTSD" many years ago. In my pre-disciplinary meetings, the interviewers acknowledged that I alleged to have been diagnosed with PTSD many years ago, yet they interrogated me relentlessly and bullied me with their questioning style. They made no attempt to accommodate a disability that they were aware of.

**Charge 4)  UNLAWFUL WHISTLEBLOWER RETALIATION** against me for filing resident quality of care complaints to the PA Department of Health, which resulted in several citations against the facility for being out of compliance in December 2015.

**Charge 5) RETALIATION-  MERITLESS DENIAL OF UNEMPLOMENT COMPENSATION**

**Charge 6) HOSTILE ENVIRONMENT IN VIOLATION OF 42 USC §1983**

**Charge 7) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**Charge 8) DEFAMATION OF CHARACTER; LIBEL AND SLANDER**

4

**I am seeking the following relief on the preceding Charge 1, Charge 2, and Charge 3:**

The fullest amount of compensatory damages for my out-of-pocket expenses caused by this discrimination and for the emotional harm that I have suffered as a direct result of the employer's discrimination. I am also seeking the fullest amount of punitive damages to punish the employer for committing these especially malicious and reckless act of discrimination against me and to deter the employer from ever committing such discrimination against any other innocent and ethical employee.

**I am seeking the following relief on the preceding Charge 4:**

Whistle-blower Retaliation is not an act of retaliation stemming from opposition to discrimination. Therefore, I ask for EEOC to refer this charge to the Pennsylvania Human Relations Commission for investigation and administrative adjudication, or in the alternative to dismiss the charge and provide me with a "Notice-of-Right-to-Sue" on this issue.

**I am seeking the following relief on the preceding Charge 5, Charge 6, Charge 7, Charge 8:**

I request that the EEOC dismiss these charges and provide me with "Notice-of-Right-to- Sue" on those issues and any other adverse actions taken by the employer in the suspension and termination time period and the post employment time period that are not enforceable by the EEOC or PHRC.

I pray that the Equal Employment Opportunity Commission will rule in my favor for the fullest amount of Compensatory, Punitive and Declaratory relief that I am seeking.

_____

Nancy E. Lewen

I have provided a courtesy copy of this EEOC complaint letter to Attorney Stephen J. Bushinski by email on _____.

# DEFENDANT - SMF
# EXHIBIT 22

SR-71487-DPXM



**KATHLEEN G. KANE**
ATTORNEY GENERAL

elderabuse@attorneygeneral.gov

**www.attorneygeneral.gov**

**Elder Abuse Complaint Form**

Elder Abuse Unit
16th Floor, Strawberry Square
Harrisburg, PA 17120

1-866-623-2137 (Help Line)

## TO REPORT AN EMERGENCY CASE OF ELDER ABUSE DIAL 9-1-1
## OR BY CALLING ADULT PROTECTIVE SERVICES 1-800-490-8505

Required fields are marked with an asterisk*
Your information:

| | |
|---|---|
| Are you a veteran? ☐ Yes ☒ No | **Age Group:** ☐ Under 18 ☐ 60-64 ☐ 18-34 ☐ 65 and older ☒ 35-59 |
| Are you on active duty? ☐ Yes ☒ No | |

☐ Mr. ☒ Ms. ☐ Mrs. ☐ Dr.   Name* NANCY E. LEWEN

Address* ██████████████

City* ██████████   State* ████   Zip Code* ████   County* ████

Daytime Phone Number* ████████   Home Phone Number* ████████   Email Address ████████

If completing this form on behalf of someone else, please complete the following information:

| | |
|---|---|
| Are they a veteran? ☒ Yes ☐ No | **Age Group:** ☐ Under 18 ☐ 60-64 ☐ 18-34 ☒ 65 and older ☐ 35-59 |
| Are they on active duty? ☐ Yes ☒ No | |

☒ Mr. ☐ Ms. ☐ Mrs. ☐ Dr.   Name* ██████████████

Address* ██████████████

City* ██████████   State* ████   Zip Code* ████   County* ████

Daytime Phone Number ( ) n/a   Home Phone Number ( ) n/a   Email Address n/a

Who is the complaint against?
Name Commandant   Assistant D.O.N.
Barbora Raymond RN, Nancy Flonigan RN   Phone Number: (814) 871-453 1

Address 560 East 3rd Street

City ERI̅   State PA   Zip Code 16505   County Erie

**This complaint is regarding (Check All That Apply)**

☐ Physical Abuse     ☐ Neglect of Care

☐ Financial Exploitation     ☐ Scam/Fraud

☐ Power of Attorney Misuse     ☐ Healthcare Services

☐ Consumer Issues     ☒ Other Concerns

**Complaint Information:**

Please explain your complaint. You may use additional sheets if necessary. Please print or type clearly. Try to be brief, but be sure to tell us **WHAT** happened, **WHEN** it happened, and **WHERE** it happened. Be specific about any oral statements that were made to you. Describe events in the order in which they happened. Attach **COPIES** of all solicitations, letters, receipts, cancelled checks (front & back), advertisements and any other papers that relate to your complaint.

Concealed a sexual assault (Deviate Sexual Intercourse) by not reporting to PDA or DOH. Involuntarily secluding a resident as punishment and/or convenience rather than hire and schedule more staff to meet the basic human needs of residents and monitor/protect against further sexual assaults. See attached typewritten statement.

M

2/1/2016

Statement of Fact

I am expressing concern as a nurse regarding a resident to resident sexual assault that occurred last year at the Pennsylvania Soldiers and Sailors Home in Erie, PA (PSSH), and the failure to keep residents safe from potential further sexual abuse. If it is necessary for you to reveal my identity to PSSH administration, I ask that you DO NOT reveal my identity to Nursing Home Administrator/Commandant Barbara Raymond, RN, or Assistant Director of Nurses Nancy Flanigan, RN. You may discretely reveal my identity to Nursing Home Administrator/Business Manager Thomas Buchleitner.

Here is the demographic information for the residents/veterans mentioned below:



Last year, on 1/25/2015, on the secured lockdown Unit D, ▮▮▮▮▮ was discovered to be performing involuntary deviate sexual intercourse, (oral sex,) on ▮▮▮▮▮ ▮▮▮▮▮ diagnosed with Dementia and Impulse Disorder. ▮▮▮▮▮ is diagnosed with Traumatic Brain Injury and Dementia. He suffers from a severe mental disability which renders him incapable of consenting to deviate sexual intercourse or any other sexual activity.

In response to the sexual assault on the secured unit, ▮▮▮▮▮ was moved to a private room on Unit A, with a wanderguard bracelet on his ankle to ensure that he can wander freely amongst the residents on the unsecured units, but can not escape the facility. He essentially remained mostly secluded in his room on Unit A for the rest of the year 2015, with no further witnessed sexual assaults. He possibly did strike up a mutual sexual "friendship" across the hall with ▮▮▮▮▮, a post CVA (stroke) patient, who is not diagnosed with dementia, but who has had his cognitive impairment tested with the BIMS cognitive impairment screening tool. ▮▮▮▮▮ tested 8 on one occasion and 11 on one occasion, placing him in the "moderate" cognitive impairment range.

In spite of his moderate cognitive impairment, ▮▮▮▮▮ has been care planned to be permitted to have a sexual relationship with another resident, ▮▮▮▮▮ also a post CVA patient. In addition to his relationship with ▮▮▮▮▮ also touches other residents inappropriately "to introduce himself."

In December 2015, to accommodate the needs of another resident, ▮▮▮▮▮ was moved to the other unsecured skilled unit, Unit B. On 12/23/2015, he was discovered by staff to be fondling two severely debilitated and severely cognitively impaired residents ▮▮▮▮▮ and Mr. ▮▮▮▮▮ Nursing staff seemingly halted the attempts before it became actual skin to skin contact or involuntary deviate sexual intercourse. He was fondling the debilitated men with his hand over their clothed genitals. Since then, to prevent further impulsive sexual assaults or attempts, ▮▮▮▮▮ initially had a brief period of 1:1 staff monitoring him, which is nearly impossible due to staffing levels. He has been secluded to his private room for discipline and/or staff convenience, so that administration will not have to hire and pay any additional staff members to protect the residents against being sexually abused. There have possibly been other residents touched inappropriately, but not documented. The documentation to substantiate the

re
oa

specific allegations herein can be found in the "Progress Notes" section of the Matrix computerized charting system at Pennsylvania Soldiers and Sailors Home.

Would your office please investigate as a crime the roles that Barbara Raymond and Nancy Flanigan played in concealing the "resident to resident involuntary deviate sexual intercourse" committed against ███████████ on 1/25/2015. We suspect that Nursing Home Administrator Barbara Raymond RN, possibly in collusion with Assistant Director of Nurses Nancy Flanigan RN, chose to conceal the assault from law enforcement authorities, and did not report the assault as required by 15 PA Code §15.151-15.157. Would you also investigate the other sexual encounters mentioned herein to determine if these cognitively impaired veterans are actually competent to legally participate in sexual activity with each other, or if any other sexual crimes have been committed.

Would you also investigate as a crime under PA Code § 201.3 the involuntary seclusion of ████████, due to lack of staff to prevent him from wandering freely and possibly sexually abusing the vulnerable debilitated population of nursing home residents. The facility always meets minimal staffing parameters required by law, but usually does not have sufficient staff to even meet the most basic human needs of residents, let alone to assign a staff member to provide 1:1 oversight to prevent further sexual assaults. Involuntary seclusion of ███████ as discipline and/or caretaker convenience seems to be the method preferred by Barbara Raymond and Nancy Flanigan, rather than paying extra nursing staff to monitor this impulsive dementia patient.

Also, due to cognitive impairment, the two residents who are care planned for a sexual relationship ██████████ and ███████████, usually do not ensure privacy when they are fondling each other. This makes roommates and other residents feel very uncomfortable when witnessing these sexual encounters, and possibly violates the other resident's legal rights. If you are unable to assist with this vague issue involving other resident's rights and protection against the unwanted witnessing of sexual activity between residents, could you please refer that issue to the Nursing Care Facilities division of the Department of Health or to the Pennsylvania Department of Aging for their assistance in forcing administrators to develop formal policy and procedures to address the intimacy needs of our mostly male, and largely cognitively impaired, US Veteran population. Thank you.

<table>
<tr><td></td></tr>
<tr><td></td></tr>
<tr><td></td></tr>
<tr><td></td></tr>
<tr><td></td></tr>
<tr><td></td></tr>
</table>

**PLEASE READ CAREFULLY**
**THE ATTORNEY GENERAL CANNOT ACT AS YOUR PRIVATE ATTORNEY**

The primary function of the Office of Attorney General is to represent the public at large. The Elder Abuse Unit may mediate your complaint if it falls within the jurisdiction of this office. Be advised that the information you provide may be shared with the party you have complained about and may be shared with or referred to other law enforcement or regulatory agencies.

Your complaint will be kept on file with our office and the information may be used to establish violations of Pennsylvania law.

By signing below:

1. I authorize the Elder Abuse Unit to provide a copy of this complaint to any person or entity about which I am complaining; and to any person or provider possessing medical and insurance records or information related to this complaint.

2. I authorize the Elder Abuse Unit to transfer my complaint to another federal, state, local, or other agency which may have jurisdiction over this matter. This authorization extends to any and all attachments which may be part of my case file, including any medical records the Office may obtain pursuant to a medical release. Additional information may be requested.

**I certify that the information provided in this complaint form, including my identity and any factual statements or allegations, are true and correct to the best of my knowledge, information, and belief.**

_Nancy Brown LPN, BA_      _2/1/2016_
YOUR SIGNATURE                     DATE

**OFFICE USE ONLY**

| Disposition of the complaint date | | Name | |
|---|---|---|---|
| ☐ OAG Unit | Agent | | Complaint # |
| ☐ Outside referral to | | By | |

# DEFENDANT - SMF
# EXHIBIT 23



**OFFICE OF ATTORNEY GENERAL, PA**
**CRIMINAL LAW DIVISION**

**Case #: 431196**

## INVESTIGATIVE REPORT

**CASE # :** 431196

**SECTION / LOCATION :** Criminal Prosecution-Pittsburgh

**CASE TITLE :** Pennsylvania Soldiers & Sailors Home

**CASE STATUS :** ACTIVE

**PRIMARY AGENT :** Brickner, Jack B

**PRIMARY ATTORNEY :** Ditka, Laura A

**TYPE :** S-1 Report

**REPORT BY :** SA Jack B. Brickner

**PREPARED ON :** 22-JUN-2016

**OTHER AGENTS / OFFICERS:**

SSA Gary Tallent

**SYNOPSIS:**

Alleged concealment of sexual assault not being reported to PDA or DOH and involuntarily secluding a nursing home resident as punishment by an employee (nurse).

**DETAILS:**

On June 17, 2016, SA BRICKNER, SSA TALLENT and BCI Intern Timothy Jaczesko, interviewed Nancy E. LEWEN; ~~███████████████████████████~~ cellular telephone: ~~███████~~, at the Erie PA OAG Office in the front conference room. LEWEN provided the following information;

    LEWEN stated she began employment at the PA Soldiers and Sailors Home, as a Licensed Practical Nurse (LPN) in September 2014, which is located at 560 East 3rd Street, Erie, PA 16507. On March 2, 2016, she was suspended from her job for "workplace violence" and then was terminated from employment on March 14, 2016. LEWEN stated she had her Civil Service Appeal hearing on June 13, 2016 and an Unemployment Appeal Hearing on June 24, 2016. As of the date of this interview, LEWEN has not received unemployment pay.

    LEWEN said she received her LPN in late 1993 and worked in Texas from 1993 through 1999. In 1999 she moved to Pennsylvania (PA) and worked in Grove City then Greenville as a LPN. She then went back to school and received her BA in Socialism and moved to Rhode Island. LEWEN denies of ever being reprimanded or disciplined prior to being hired at the PA Soldiers and Sailors Home. LEWEN moved back to PA in 2014 and began work as an LPN at the PA Soldiers and Sailors Home. Her duties as a LPN at the PA Soldiers and Sailors Home required her to work in all the different units. She identified these units as:

This document is the property of the Pennsylvania Office of Attorney General. Do not disseminate it or its contents outside the Office of Attorney General without the expressed consent of the originator.



**OFFICE OF ATTORNEY GENERAL, PA**                                              **Case #: 431196**
**CRIMINAL LAW DIVISION**

### INVESTIGATIVE REPORT

Unit  A & B  -  Skilled Unit          (total of 75 patients – 36 in A Unit & 39 in B Unit)
Unit  C       -  Personal Care Unit   (total of 100 patients)
Unit  D & E  - Dementia  Unit         (total of 32 patients - 20 in D Unit & 12 in E Unit)

The PA Soldiers and Sailors Home patients are made up of Veterans or spouses of Veterans. It
provides care and houses both male and females. Care plans are adopted for all patients by the
Home's Administration. There are policies and procedures in place for the PA Soldiers and Sailors
Home; however LEWEN stated she disagrees with some of those policies and has told some
administrators of what other nursing care facility's policies are.

LEWEN was provided a copy of the initial Elder Abuse Complaint Form which she verified as the
complaint she filed on or about, February 1, 2016. Since filing this complaint with the PA OAG, she
also filed an online complaint with the Department of Health (DOH). Recently, LEWEN was advised in
writing that the DOH found "no deficiencies". LEWEN was asked to provide SA BRICKNER with a
copy of the complaint she filed with the DOH and a copy of their written response. LEWEN admitted
that the issues she filed in her complaint to the DOH, are the same issues she filed with the PA OAG.

LEWEN stated she believed that none of the six men (patients) she listed in her complaint was of
sound mind to consent to any sexual acts, including the "suspect". ▆▆▆▆▆▆▆▆ said all six
were confined to wheelchairs. LEWEN further related, even after she reported these incidents, DAVIS
somehow got access to drain cleaner and rubbed his hands in it. LEWEN was further alleging the
administration was also responsible for this drain cleaner incident to have happen. According to
LEWEN, after she reported ▆▆▆▆ making sexual contacts with several different male patients,
DAVOIS was moved to A Unit. An electronic bracelet which is programed to alarm when a patient
leaves a specific location was placed on ▆▆▆ in efforts to help staff know of his whereabouts. One-
on-one staffing was also initially assigned to ▆▆▆▆, in order to keep him out of some rooms. LEWEN
believes the Administration should have kept this one-on-one supervision on ▆▆▆▆

LEWEN said the PA Soldiers and Sailors Home's Policy stated; patients who cannot function in Units
C, D, and E are moved into the A or B Units, for skilled care. LEWEN admitted that in her complaint to
the OAG, she felt moving ▆▆▆▆ into the Skilled Care Unit was as punishment, instead of being the
next proper housing move according to policy.

LEWEN believes she was terminated from the PA Soldiers and Sailors Home because she "blew the
whistle" and filed a complaint with the PA OAG and the DOH. When asked about the "workplace
violence" issues; LEWEN described this incident to involved a fellow employee, Barry BLASIC, who
was going through a divorce and to whom she claimed "agreed to go out with me". LEWEN said she
wrote a letter and sent a copy of BLASIC's online dating letter to BLASIC's ex-wife. LEWEN did not
indicate the purpose of sending this letter other than BLASIC was ready to date other women. The PA
Soldiers and Sailors Home administration told LEWEN that she was obsessed with BLASIC and was
bulling and harassing him. LEWEN also said that during a conversation with another employee,
LEWEN admitted to saying "and that's why employees go out and get a gun and go postal on people".
Because of this statement by LEWEN, the administration wrote her up for workplace violence and
suspended her which resulted in termination. LEWEN stated Attorney Steven BASSINSKI, who works
with the Office of Chief Counsel for the D.M.V.A was involved in her appeals. LEWEN provided

*This document is the property of the Pennsylvania Office of Attorney General.  Do not disseminate it or its contents outside the Office of Attorney*
*General without the expressed consent of the originator.*



**OFFICE OF ATTORNEY GENERAL, PA**
**CRIMINAL LAW DIVISION**

**Case #: 431196**

### INVESTIGATIVE REPORT

Attorney BASSINSKI's phone number (717) 861-8503 to the agents, should they wish to contact him regarding her termination.

When asked if any of the Home's patients complained of any sexual contacts or advances, LEWEN said "no, but I don't believe they are capable of making that decision to consent". LEWEN however stated that there is a cognitive type of test which the PA Soldiers and Sailors Home conducts in order to determine if a patient can make decisions regarding their medical and health decisions called a "BIMS". This cognitive impairment screening tool rates the patient on a 1 to 21 scale.

LEWEN stated the PA Soldiers and Sailors Home does conduct care plans which allows/permits patients to have sexual relations with other patients. These plans allow contact between patients of opposite sexes or of same sexes. LEWEN feels neither the PA Soldiers and Sailors Home plans, nor their policies prohibit where these sexual contacts are allowed or not allowed to take place. When asked, LEWEN said she is not aware of any visitors or other patients filing complaints to the Administration, claiming of being offended of seeing any sexual contact(s) or acts.

LEWEN stated three of the six patients whom she listed in her complaint to the PA OAG, have since passed away. LEWEN also said the PA Soldiers and Sailors Home also fired Thomas BUCHLEITNER, who was the Business Manager. According to LEWEN, the Administration responds to deficiencies cited the Inspectors, as being the staff's fault and disciplines the staff. LEWEN also agreed that the DOH investigation resulted in "no deficiencies" which is exactly the same complaint she filed with the PA OAG. LEWEN could not provide any laws or statues which she believed were violated by the PA Soldiers and Sailors Home Administration. LEWEN also acknowledged that the agents were looking for any violation of criminal acts and not violations of the PA Soldiers and Sailors Home's policies.

**ANTICIPATED ACTIONS:**

**ATTACHMENTS:**

This document is the property of the Pennsylvania Office of Attorney General. Do not disseminate it or its contents outside the Office of Attorney General without the expressed consent of the originator.

# DEFENDANT - SMF
# EXHIBIT 24



**OFFICE OF ATTORNEY GENERAL, PA**
**CRIMINAL LAW DIVISION**

**Case #: 431196**

### INVESTIGATIVE REPORT

| | |
|---|---|
| **CASE # :** | 431196 |
| **SECTION / LOCATION :** | Criminal Prosecution-Pittsburgh |
| **CASE TITLE :** | Pennsylvania Soldiers & Sailors Home |
| **CASE STATUS :** | ACTIVE |
| **PRIMARY AGENT :** | Brickner, Jack B |
| **PRIMARY ATTORNEY :** | Ditka, Laura A |
| **TYPE :** | S-2 Report |
| **REPORT BY :** | SA Jack B. Brickner |
| **PREPARED ON :** | 17-AUG-2016 |

**OTHER AGENTS / OFFICERS:**

SSA Gary TALLENT

**SYNOPSIS:**

Alleged concealment of sexual assault not being reported to PDA or DOH and involuntarily secluding a nursing home resident as punishment by an employee (nurse).

**DETAILS:**

On August 12, 2016 SA BRICKNER and SSA Gary TALLENT interviewed Barbara Lee RAYMOND; DOB: ███████████████████████████████, work address: 560 East 3rd Street, Erie, PA 16507; work telephone number: ███████████, at the PA Soldiers and Sailors Home in her office. RAYMOND provided the following information;

RAYMOND is the PA Soldiers and Sailors Home's Administrator. Upon informing RAYMOND that our Office received and opened a criminal investigation into a complaint regarding residence's sexual acts, RAYMOND immediately said she knew what it was about. SSA TALLENT informed RAYMOND that the complainant authorized both SA BRICKNER and SSA TALLENT to inform RAYMOND of who filed this complaint and before SSA TALLENT said her name, RAYMOND immediately said "it's Nancy LEWEN".

RAYMOND stated LEWEN is an ex-employee who was terminated due to a hostile work environment. RAYMOND provided SA BRICKNER with a photocopy of an email from LEWEN to another employee, Barry BLASIC. This two (2) page printed email was sent from LEWEN to BLASIC, on a PA Soldiers and Sailors Home computer on March 2, 2016. BLASIC apparently reported problems of RAYMOND being fixated with dating him to the Administration. In this email, RAYMOND informs BLASIC that since he blocked her on Facebook, that she had sent his ex-wife an email/letter. RAYMOND cut and pasted her letter/email to BLASIC's ex-wife, Jennifer.

*This document is the property of the Pennsylvania Office of Attorney General. Do not disseminate it or its contents outside the Office of Attorney General without the expressed consent of the originator.*
CLD-01 Rev. 07.2012



**OFFICE OF ATTORNEY GENERAL, PA**
**CRIMINAL LAW DIVISION**

**Case #: 431196**

### INVESTIGATIVE REPORT

RAYMOND also provided SA BRICKNER with a photocopy of the "Tracking# 950552151926061000554" document from the PA Soldiers and Sailors Home system's computer, showing the email coming from LEWEN to BLASIC on March 2, 2016 at 1:54 am.

### These photocopied documents were placed in the 1-A-Serial# 1 of this Case File.

RAYMOND said around the same time period, LEWEN began to report the PA Soldiers and Sailors Home being in violations of different issues which she claimed were deficiencies to the PA Department of Health. One of LEWEN's complaints dealt with men residences having sexual (homosexual) contact with one another. RAYMOND stated they are not permitted to disallow residences/patients of having sexual contact with one another regardless of whether it consists of heterosexual or homosexual relationships, unless they are mentally incapable of consenting to sexual physical contact with another. RAYMOND said 91% of their residences/patients are male and 91% are military veterans. RAYMOND stated the Facilities Policies directs staff how to handle sexual relationships between residences/patients. Policies also directs staff concerning residences/patients who are diagnosed with dementia, Alzheimer or other brain injuries to keep those residences/patients separate from having any sexual relationships. RAYMOND stated a test called; BIMS Cognitive Impairment Screening is utilized by the PA Soldiers and Sailor Home's physicians to determine the mental status of those residences/patients. Residences/patients that are mentally able to make decisions regarding consensual sexual relationships with other residences/patients are permitted to do so. Policies direct staff to try to keep those sexual relationships/contacts in private locations (or out of the general view of others).

RAYMOND stated LEWEN reported that ████████████████████ were observed engaging in sexual acts together and were mentally incapable of consensual sex to the PA Department of Health. LEWEN apparently reported both ████████████ were mistreated because of this. RAYMOND stated both ████████████ were diagnosed as being unable to make decisions and staff immediately separated both men, by gently leading ████ to another section of the Home. Both residents were assessed for injury and no injuries were found. Because they do not lock residences/patients in rooms, they decided to place a staff (one to one) to monitor ████████ movements throughout the Home in order to prevent him from making sexual contacts with other patients.

On February 4, 2015, the PA Department of Health, Division of Nursing Care Facilities sent an inspector to look into the complaints filed by LEWEN. According to that Inspector, it was determined that no deficiencies, related to the health portions of the survey process, were identified. On February 6, 2015, RAYMOND received a letter form Supervisor Kathryn TURNER of the Pennsylvania Department of Health, Field Office, Division of Nursing Care Facilities. This one page letter notified RAYMOND that a representative of their Agency completed an Abbreviated Survey to determine if the PA Soldiers and Sailor Home met the requirements to participate in the federal certification and state licensure programs. The findings of this survey revealed that no evidence of deficient practice had been identified. RAYMOND provided SA BRICKNER with a photocopy of this letter.

### This photocopied letter was also placed in the 1-A-Serial# 1 of this Case File.

RAYMOND stated personnel issues regarding LEWEN did not involve anything regarding LEWEN's complaints to the PA Department of Health and was solely based upon issues between LEWEN and BLASIC which took place at the PA Soldiers and Sailors Home. LEWEN made references to physical



**OFFICE OF ATTORNEY GENERAL, PA**
**CRIMINAL LAW DIVISION**

**Case #: 431196**

### INVESTIGATIVE REPORT

violence in the work place. According to RAYMOND, LEWEN had applied for Unemployment Compensation and had been denied. She then appealed that decision twice and was also denied twice. LEWEN is currently pursuing an EEOC complaint against the PA Soldiers and Sailors Home, attempting to link her complaints to the PA Department of Health, as the reason she was terminated from employment.

**ANTICIPATED ACTIONS:**

**ATTACHMENTS:**

This document is the property of the Pennsylvania Office of Attorney General.  Do not disseminate it or its contents outside the Office of Attorney General without the expressed consent of the originator.

CLD-01 Rev. 07.2012                         --- **CONFIDENTIAL** ---                                    Page 3 of 3

# DEFENDANT - SMF
# EXHIBIT 25

**Zalewski, Anna**

| | |
|---|---|
| **From:** | Skinner, Brian |
| **Sent:** | Wednesday, March 2, 2016 12:46 PM |
| **To:** | Raymond, Barbara |
| **Subject:** | RE: Lewen messages |

Ok good I was afraid to ask if you had time or not

---

**From:** Raymond, Barbara
**Sent:** Wednesday, March 02, 2016 12:43 PM
**To:** Skinner, Brian
**Subject:** RE: Lewen messages

That works — we have to go over disciplines too

**Barbara L. Raymond, RN, NHA** | Commandant
PA Department of Military and Veterans Affairs | Bureau of Veterans Homes
Pennsylvania Soldiers' & Sailors' Home of Erie
560 East 3rd Street | Erie, PA 16507
Phone: 814.878.4926 | Fax: 814.871.4617
www.dmva.pa.gov

PRIVILEGED AND CONFIDENTIAL COMMUNICATION The information transmitted is intended only for the person or entity to which it
is addressed and may contain confidential and/or privileged material. Any use of this information other than by the intended recipient is
prohibited. If you receive this message in error, please send a reply e-mail to the sender and delete the material from any and all
computers.  Unintended transmissions shall not constitute waiver of the attorney-client or any other privilege.

*E-Mail:  braymond@pa.gov.*

---

**From:** Skinner, Brian
**Sent:** Wednesday, March 02, 2016 12:43 PM
**To:** Raymond, Barbara
**Subject:** RE: Lewen messages

PDC at 1:00 — how about 1:30

---

**From:** Raymond, Barbara
**Sent:** Wednesday, March 02, 2016 12:38 PM
**To:** Skinner, Brian
**Subject:** RE: Lewen messages

Eating really quick — how about 1?

**Barbara L. Raymond, RN, NHA** | Commandant
PA Department of Military and Veterans Affairs | Bureau of Veterans Homes
Pennsylvania Soldiers' & Sailors' Home of Erie
560 East 3rd Street | Erie, PA 16507
Phone: 814.878.4926 | Fax: 814.871.4617
www.dmva.pa.gov

PRIVILEGED AND CONFIDENTIAL COMMUNICATION The information transmitted is intended only for the person or entity to which it
is addressed and may contain confidential and/or privileged material. Any use of this information other than by the intended recipient is

prohibited. If you receive this message in error, please send a reply e-mail to the sender and delete the material from any and all computers.  Unintended transmissions shall not constitute waiver of the attorney-client or any other privilege.

*E-Mail:* *braymond@pa.gov.*

**From:** Skinner, Brian
**Sent:** Wednesday, March 02, 2016 12:08 PM
**To:** Raymond, Barbara
**Subject:** Lewen messages

Before Barry left, he gave me messages from the last 10 days or so from Lewen.  I really need you to read them first before I send them, and Kathy should be in your office to read them also.  Not in nursing around Nancy or Kevin.  Let me know when.

**Brian S. Skinner, PHR** | Human Resources Analyst 2
PA Department of Military and Veterans Affairs | Bureau of Veterans Homes
PA Soldiers' and Sailors' Home
560 East 3rd Street | Erie, PA  16507
Phone: 814-878-4944| Fax: 814-878-4998
www.dmva.state.pa.us

**PRIVILEGED AND CONFIDENTIAL COMMUNICATION** The information transmitted is intended only for the person or entity to whom it is addressed and may contain confidential and/or privileged material. Any use of this information other than by the intended recipient is prohibited. If you receive this message in error, please send a reply e-mail to the sender and delete the material from any and all computers.  Unintended transmissions shall not constitute waiver of the attorney-client or any other privilege.

*E-Mail:* *bskinner@pa.gov.*